**STATE of Missouri, Respondent,**

**v.**

**Donald Keith SAWYER, Appellant.**

**No. 49194.**

Supreme Court of Missouri,

Division No. 1.

March 11, 1963.

**488**

Charles M. Shaw, Clayton, for appellant.

Thomas F. Eagleton, Atty. Gen., Brick P. Storts, III, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

ELMO B. HUNTER, Special Judge.

On September 26, 1961, defendant, Donald Keith Sawyer, was convicted by a jury in the Circuit Court of St. Louis County

of the crime of robbery in the first degree by means of a dangerous and deadly weapon. The jury fixed his punishment at five years. After an unsuccessful motion for new trial and allocution, the court entered judgment sentencing defendant to five years in the Department of Corrections of the State of Missouri. This appeal followed.

Although the defendant was represented by counsel at every stage of the proceedings in the circuit court he has not provided this court with a brief. The case is before us on the transcript of the record on appeal and a brief filed by the State. Our duty is to review the valid assignments of error set forth in the motion for new trial. (S.Ct. Rule 27.20, V.A.M.R.), and the portions of the record required by S.Ct. Rules 28.02 and 28.08.

A summary of pertinent portions of the evidence is helpful to an understanding of the assignments of error contained in the motion for new trial.

On August 21, 1961, two young men, Jackie Glen Thompson and Jerry Wayne Walton, left the City of St. Louis to go to California to obtain jobs. Their plan to walk and hitchhike to Pittsburg, Kansas, to the home of Thompson's grandparents. There they expected to obtain sufficient money from the grandparents to buy bus tickets to their California destination.

As they left St. Louis Thompson was carrying a suitcase that he owned which was worth about $6.00. In it were articles of clothing belonging to him and some belonging to Walton, all having an approximate value of $20.00. Additionally, Walton had $65.00 in cash which he divided by giving Thompson approximately $30.00.

The two young men proceeded on Highway 66 to Woody's Quonset Hut, a truck stop in St. Louis County, arriving about 11:00 p. m. They planned to get a ride to a larger truck stop on Highway 66, called "The Diamonds." They checked taxicab charges, and learned it would cost $5.00 to

$6.00 to go there by cab. Thompson had struck up a conversation with a stranger, William Howard Boyer, and he asked Boyer if he had a car and if he would be willing to take them to "The Diamonds" for $3.00. Boyer agreed to do so, and was given $3.00. On their way to the car Boyer told them he had a buddy in it who was sleeping.

The automobile had no back seat. Walton who was carrying the suitcase put it in the back on the car floor and sat on it. The sleeping man, who turned out to be defendant, and who owned the 1954 Plymouth car, moved to the center of the front seat, Boyer to the driver's seat and Thompson to the right side of the front seat. After about a ten minutes' drive Boyer pulled over and asked Sawyer to drive, and Sawyer said something. Boyer got out, went around the car and got in the rear on the right hand side, Walton moved behind the driver's seat, and defendant moved to the driver's seat. They proceeded down the road for a couple of minutes with defendant driving when Thompson heard Boyer say, "Give me your money. Give me your wallet." Thompson turned around and could see the outline of a gun in Boyer's hand.

Thompson testified that Sawyer told Boyer, " 'Put that thing away.' He said, 'Don't be foolish,' just knock it out, in other words; so then Boyer says, 'Well,' he says, 'I'm drunk enough I'd just as soon blow their heads off.' " Walton made no move to give over his money. Boyer then fired a shot in front of Walton's face, and when Walton was slow to respond, again fired the gun. As ordered, both Walton and Thompson then gave over their wallets containing their money and other items such as selective service cards and drivers' licenses. Then defendant said, " 'Well, we'll just drop them out somewhere where they can get a ride.' Boyer said, 'Okay.' " Defendant stopped the car just east of Pacific, Missouri, between Eureka and Pacific, in front of a closed filling station. As Thompson and Walton started to get out of the car,

"Boyer asked Sawyer if they wanted the suitcase and Sawyer said 'yes,' so he said 'Get out and leave the suitcase in.'" Sawyer said he "wanted the suitcase" and said to Boyer "Keep the suitcase."

Walton's description of this part of the incident was that after Boyer shot the gun Sawyer told Boyer "'Man, put that thing away.' And Boyer says, 'No,' he says, something about, 'Forget it,' he says, 'I'm just drunk enough to shoot these guys,' he said, 'We got their money.' * * * finally they pulled over and let us out and Boyer asked Sawyer, he says, 'Do you want that suitcase?' And Sawyer says, 'Yes, get it.' So they let us out and they took off, and Jack got the license number."

The two boys walked ten or fifteen yards from where they were let out, and there found an outside telephone booth by the filling station, called the Highway Patrol and reported the entire incident. Thompson had written down on a match cover the license number of the automobile in which they had been robbed and he gave that number to the Highway Patrol, and later to the Fenton police.

About 2:00 a. m. defendant's car was observed by the Highway Patrol and the Fenton police on Highway 66 near Woody's Quonset Hut. They chased it and overtook it. The defendant and Boyer were still in it as was Thompson's suitcase which had been opened and its contents gone through. Boyer still had some of the contents of the boys' wallets, including the drivers' licenses and selective service cards.

■ We turn to defendant's motion for new trial to examine his contentions of error, the first being that the venue of the case according to the evidence was not shown to be in St. Louis County. However, the evidence touching the venue question does show that the robbery occurred in St. Louis County. Trooper Scheu stated that right after their telephone call he met Thompson and Walton east of Pacific, Missouri, east of the stop light just west of the railroad tracks. "Q. Now, * * * is that area in St. Louis County? A. Yes, sir. Q. That is in St. Louis County, is that correct? A. Yes, sir." This coupled with Thompson's testimony that he walked only 10 or 15 yards to a phone, then called the highway patrol and waited at this phone booth until the highway patrolman arrived is sufficient to support a finding that the robbery occurred in St. Louis County. There was other evidence indicating the eastern portion of Pacific, Missouri, and Highway 66 on east of Pacific, Missouri, was in St. Louis County. Additionally, we note defendant's attorney during the trial must have thought there was proper venue: "Q. * * * When you say that 'we was robbed,' that took place definitely east of Pacific, is that right? A. Yes, sir. Q. So that would be in Saint Louis County * * *." We find no merit in defendant's first contention.

■ Secondly, defendant contends the trial court abused its discretion by permitting the rebuttal testimony of Officer Scheu. Defendant had taken the stand and testified in his own defense. His version of the incident was that while he was driving down the highway he heard a gun go off and turned around and saw Walton and Boyer wrestling over the gun. He indicated it was Walton who must have had a gun and who was attempting to rob Boyer. He denied he or Boyer had robbed anyone. He stated the draft cards and drivers' licenses did not come from Thompson's and Walton's wallets but had been found in the suitcase the boys had voluntarily left in the car. He testified he told all this to Trooper Scheu shortly after his arrest. Trooper Scheu at the close of defendant's evidence was recalled to rebut defendant's statement that he had told the above version of the incident to Officer Scheu. Thereafter, defendant was permitted to return to the witness stand to surrebut Officer Scheu's rebuttal testimony.

■ Clearly the trial court did not err to defendant's prejudice. As pointed out in State v. Lewis, Mo.Sup., 137 S.W.2d 465,

467, "Where a court admits evidence in rebuttal and then gives the defendant full opportunity to explain or rebut such evidence, no rights of the defendant are violated." Additionally, the scope of rebuttal testimony is largely within the sound discretion of the trial court, and, unless the trial court has abused its discretion to the prejudice of defendant an appellate court will not reverse on that ground, even though the evidence is not strictly or entirely rebuttal evidence. State v. Dees, Mo.Sup., 276 S.W.2d 201; State v. Mason, 322 Mo. 194, 14 S.W.2d 611. Under the circumstances presented, we find no abuse of discretion on the part of the trial court, nor any prejudice of the rights of defendant.

■■ Did the trial court err as defendant next contends in failing to sustain defendant's motion for a judgment of acquittal filed at the close of all the evidence? In determining the sufficiency of the evidence to make a submissible case or to sustain a conviction, the reviewing court considers as true the evidence favorable to the State together with the favorable reasonable inferences to be drawn therefrom, and disregards evidence to the contrary. Such evidence shows a robbery occurred during which Boyer took money and property from Thompson and Walton at gun's point, after having fired it twice. There is ample evidence to the effect that defendant participated actively in this robbery as Boyer's accomplice. Most revealing on this subject is the evidence that before defendant stopped his car to let Thompson and Walton out *and while they were still under the threat of Boyer's gun* Sawyer directed that Thompson's suitcase together with its contents be left in his car as he wanted it. When later apprehended he still had this suitcase in his car. The evidence is such as to permit the jury to find beyond a reasonable doubt that all the elements of robbery in the first degree as set out in Section 560.120 RSMo 1959, V.A.M.S., were proved. The trial court did not err in overruling defendant's motion for acquittal filed at the close of all the evidence in the case.

■ Nor did the trial court err in overruling defendant's similar motion for acquittal filed at the close of the State's evidence on the ground that no submissible case has been made. From what we have said it is apparent that a submissible jury case had been made at that point. However, we need not so rule because any error in overruling the motion for judgment of acquittal made at the close of the State's case was waived by the introduction of evidence by the defendant in his own behalf. State v. Slade, Mo.Sup., 338 S.W.2d 802.

■ Defendant's next contention in his motion for new trial is, "That the Court committed prejudicial error in submitting to the jury for their consideration the court's instruction concerning robbery in that it was an improper instruction under the law and under the facts of the case." This contention is no more than that the instruction is improper. As such, the contention is meaningless. It fails to state or even indicate wherein or why the instruction is improper. Our rule 27.20 requires a motion for new trial "must set forth in detail and with particularity, * * * the specific grounds or causes therefor" and if it does not, it presents nothing for review. This type of general assignment of error wholly failing to set forth in detail and with particularity the specific grounds or causes relied upon for the granting a new trial has frequently and uniformly been condemned and held to preserve and present nothing on appeal, and we again so rule. See, State v. Payne, Mo.Sup., 342 S.W.2d 950; State v. Williams, Mo.Sup., 343 S.W. 2d 58; State v. Whitaker, Mo.Sup., 312 S. W.2d 34.

■ For his sixth assignment of error defendant points to the trial court's refusal to give defendant's instruction concerning him being a mere spectator. In Instruction No. 2 given by the trial court the subject of mere spectator was covered. The defendant has not complained of Instruction No. 2 and it is certainly at least as favorable to defendant as he is entitled to have. See, State v.

Gilliam, Mo.Sup., 351 S.W.2d 723. Since the trial court adequately instructed on the subject it cannot be convicted of error for refusing to do so a second time. State v. Harris, Mo.Sup., 351 S.W.2d 713(5); State v. Chaney, En Banc, Mo.Sup., 349 S.W.2d 238, 244; State v. Crow, 346 Mo. 306, 141 S.W.2d 66, 72.

In Instruction No. 3 the court instructed that voluntary intoxication is no excuse for the commission of crime. Defendant assigns error, saying intoxication was not raised by him as an excuse or reason for the acts that allegedly took place. The record is replete with testimony concerning heavy drinking by and the intoxication of both defendant and Boyer. Defendant testified he was sick from drinking and a little intoxicated at the time of the robbery.

It is the accepted rule that voluntary intoxication is not an excuse for the commission of crime. State v. Smith, Mo.Sup., 342 S.W.2d 940. Our Rule 26.02 states "the court, whether or not it shall have been requested so to do by either party, must instruct·the jury in writing upon all questions of law necessary for their guidance in returning their verdict * *." Assuming that the instruction is outside the scope of the mandatory instructions contemplated by Rule 26.02 (See, State v. Chaney, En Banc, Mo.Sup., 349 S.W.2d 238, 241) this does not mean that the trial court may not or should not give it. Even though defendant takes the position in his motion for new trial that he was not relying on drunkenness as an excuse for his alleged acts, his testimony and that of others placed that subject before the jury. It was in the interest of justice to give the jury for their guidance in returning their verdict the applicable law on·this subject before them under the evidence, and the trial court did not err in so doing.

The final three contentions of defendant are that the trial court erred in not instructing on the crimes of stealing over and under fifty dollars in lieu of robbery in the first degree. It is defendant's reasoning there is evidence that at most all he did was keep a suitcase. Defendant overlooks the fact that in a prosecution for robbery in the first degree, the value of the items taken is not important as long as the constitutive elements of the crime are present. State v. Van Horn, Mo.Sup., 288 S.W.2d 919. As we stated in State v. Churchill, 299 S.W.2d 475, "The essence of the offense of robbery in the first degree * * * is 'feloniously taking the property of another from his person, or in his presence, and against his will' V.A.M.S. § 560.120, and the offense may be committed in two ways; one, by violence, or, two, by putting the victim in fear of some immediate injury to his person."

The State's evidence shows defendant participated in and committed the robbery in the first degree charged in which items and money were taken in an immaterial but substantial total amount. Defendant's evidence is such as to show he committed no crime—not even that of stealing in any degree. Thus, the evidence made a case of robbery in the first degree or nothing. There is no proper place for an instruction on stealing in any amount, for there is no evidence to support such a submission. State v. Parker, Mo.Sup., 324 S.W.2d 717; State v. Herron, Mo.Sup., 349 S.W.2d 936. The trial court did not err in not instructing on the crimes of stealing over fifty dollars or stealing under fifty dollars.

We have examined the information, verdict, judgment and sentence, as required by our Rules 28.02 and 28.08, and find them sufficient in form and substance.

The judgment is affirmed.

All concur.