**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Herbert William HARRIS,
Defendant-Appellant.**

No. 46743.

Missouri Court of Appeals,
Eastern District,
Division Six.

Jan. 31, 1984.

Allen I. Harris, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

WELDON W. MOORE, Special Judge.

A jury found defendant, Herbert William Harris, guilty in Count I of burglary, first degree, Sections 560.040, 560.095 [1]; in Count II of robbery, first degree, Sections 560.120, 560.135; in Count III of forcible rape, Section 559.260; in Count IV of assault with intent to do great bodily harm, Section 559.-190; in Count VII of armed criminal action, Section 559.225; in Count VIII of exhibiting a deadly weapon in a rude, angry and threatening manner, Section 564.610. In accordance with the punishment assessed by the jury on each count, the Court sentenced the defendant to twenty (20) years on Count I, twenty-five (25) years on Count II to commence at the expiration of the sentenced imposed in Count I, five (5) years on Count IV, to commence at the expiration of sentences imposed on Counts I and II, fifty (50) years on Count V to commence at the expiration of sentences imposed on Counts I, II and IV, five (5) years on Count VIII to commence at the expiration of sentences imposed on Counts I, II, IV and V and life imprisonment on Count III to commence at the expiration of sentences imposed on Counts I, II, IV, VII and VIII for a total of one hundred-five (105) years plus life imprisonment. Defendant appeals.

The sufficiency of the evidence to sustain the conviction is not questioned. The evidence briefly stated, as viewed most favor-

---

**1.** All references to statutes are to RSMo 1969 except 559.225 which refers to Laws of 1976.

able to the state permitted the jury to find that on July 26, 1978, the victims, Nellie age 81, Minnie her sister, and Earl lived in apartments in a fourplex in the City of St. Louis. Nellie lived in one of the downstairs apartments while Minnie and Earl occupied the two upstairs apartments. The basement was vacant. Nellie and Minnie were alone in their apartments. Earl had gone out for the evening. Between 10:00 and 11:00 o'clock P.M., appellant tore the facing off the door and entered Nellie's apartment. He was wearing a nylon stocking mask and carried a gun. Nellie described him as a young black male. He pulled Nellie out of her seat and hit her about the head four times with the butt of the gun. These blows caused her to bleed about the head. The appellant then pushed her on the bed and threw a bedspread over her. He removed her eyeglasses with the attached hearing aid and searched drawers and closets. From time to time appellant would return to the bed, lift up the spread and point the gun at her threateningly. Nellie pleaded with him to not shoot. Appellant took about sixty dollars folding money and a wrist watch from Nellie. He got in bed with Nellie and forced her to have sexual intercourse with him. He then went to the kitchen, found some matches and burned her by placing lit matches on her legs three to five times. Appellant next went to Minnie's apartment with the gun in his hand and still wearing the nylon stocking mask. Minnie could clearly see the man's face through the nylon stocking mask. Appellant told Minnie, who was on the porch, to get back into the house or he would shoot her. He again threatened to shoot her unless she laid down on the bed and covered her head. Minnie complied with his order. Appellant rummaged through the house and later asked Minnie for her purse. She got it for him. He dumped its contents on the bed and took the few dollars in it. He also took her pendulum watch with the crystal face. Appellant then tied Minnie's hands and feet and placed the cord around her neck and tied her to the bed. Minnie freed herself and called the police who arrived momentarily. Nellie had found her

eyeglasses and was going to Minnie's apartment when the police arrived. The police called an ambulance for Nellie. Minnie told the police that she thought appellant was still in Earl's apartment. Additional police officers arrived. A negro male was seen on the second floor porch. When he saw the officers, he crouched down. Policemen pointed guns at him and told him "Don't move." Suddenly he stood up and reentered the apartment. From the back porch he jumped to the ground, got up and started to run. An officer commanded him to stop and appellant turned around and pointed the gun toward the police. The police fired. Appellant fell to the ground. He got up and tried to run a second time. Again the police fired. Again appellant fell to the ground. Appellant was handcuffed, searched and placed under arrest. Money was removed from his pocket. A revolver and two cigarette lighters were found on the ground where appellant was lying. Nellie and Minnie were taken to the back yard to see if they could identify appellant. Appellant asked Nellie, "I didn't hurt you, did I?" Nellie replied, "You sure did, but I prayed for you." Both Nellie and appellant were taken to the hospital. Nellie was treated for her injuries and a vaginal smear was taken. Tests performed on the smear revealed that human spermatozoa were present. Appellant's underwear, seized by the police, were found to have human seminal fluid present in the crotch area.

Earl returned home to find the police there. All but one of his apartment doors were open. A basement window had been kicked in. Telephone wires had been pulled out. His tin snips were missing and a pair was found near Nellie's washer. His pick ax was gone and one similar was found on Nellie's back porch. His apartment had been ransacked and a knife had been used in an unsuccessful effort to pry open a metal box. Fingerprints on the knife and the doorframe matches those of appellant. A lighter owned by Earl was missing. Slivers of glass that would form a circle identical to the crystal of a watch were found in appellant's pants' pocket.

Appellant first claims that the Court erred in not accepting his plea of guilty pursuant to a plea bargain disposition as a punishment for invocation of his constitutional rights. Appellant concedes that he has no constitutional rights to have his plea of guilty accepted by the trial court. *State v. Douglas,* 622 S.W.2d 28 (Mo.App.1981); *State v. Cotton,* 621 S.W.2d 296 (Mo.App. 1981). He contends the Court acted arbitrarily when it changed its position from accepting the plea bargain to not accepting it. It is clear from the record that the Court never accepted any plea agreement. Plea negotiations between the state and appellant had been engaged in for several days. On the first day of the trial, motions were heard and about 6:00 P.M. the selection of the trial panel was completed. The trial judge had left his chambers, locked the door and was walking in the hallway outside the courtroom when he was approached by attorneys for the state and the appellant and advised by them that appellant was going to take a plea. The judge was aware that the negotiations concerned a twenty (20) year sentence. He at no time indicated he would accept such recommendation. He returned to his chambers and took the bench. While on the bench he indicated that he would not accept the plea for twenty (20) years, but he would accept one for twenty-five (25) years. It is unclear whether appellant failed to respond to the trial court's inquiry of twenty-five (25) years or whether he refused to accept the new offer. The appellant told the Court, "I think I can beat this," in response to the Court's inquiry as to why it was taking him so long in making his decision. The next day appellant was given another chance to bargain for a plea. Defense counsel would not say whether appellant was willing to plead guilty until the prosecution could make an offer that appellant knew would be acceptable to the trial court. The trial court refused to delay for further negotiations and jury trial was had.

The bargain made between appellant and the prosecution wherein appellant agreed to plead to twenty (20) years was never accepted by the trial court. Appellant was advised of the trial court's refusal and thereafter was offered a twenty-five (25) year sentence in exchange for a plea of guilty. This twenty-five (25) year sentence offer was never accepted by appellant.

■ There is no evidence in the record indicating the trial court abused its discretion in refusing to accept appellant's supposed plea to a twenty (20) year sentence. Point one is ruled against appellant.

■ Next appellant contends the Court erred in refusing to allow him to endorse three alibi witnesses because he had failed to comply with the prosecution's request for discovery. Rules 25.05 and 25.08. The prosecution properly requested discovery of an alibi defense to which no response was ever made. On the second day of the trial, May 5, 1981, appellant sought to endorse two of his relatives and his girlfriend. Counsel for appellant was aware of what the testimony of one of the witnesses, Elaine Davis, would be but his decision was not to call her, but appellant insisted. Counsel for appellant stated that his client did not give him the names of the other two witnesses until the morning of the second day of the trial. The record reflects that on February 27, 1981, appellant sought and was granted a continuance to locate and interview alibi witnesses, including witness Elaine Davis. The trial judge on objection of the prosecution refused the request to endorse the alibi witnesses. Rule 25.16 authorizes the trial court to exclude the testimony of witnesses whose identity has not been properly divulged pursuant to a request for discovery. *State v. Harry,* 623 S.W.2d 577 (Mo.App.1981); *State v. Jones,* 614 S.W.2d 774 (Mo.App.1981). The sanction to be imposed lies within the discretion of the trial court. Discretion will be abused only where fundamental unfairness to the defendant will result from the sanction imposed. *State v. Royal,* 610 S.W.2d 946 (Mo. banc 1981).

The sanction applied by the Court was proper. No reasonable justification was given for late endorsement. It is inconceivable that these three alibi witnesses were

undiscovered the three years prior to the second day of the trial. Especially where two were relatives to the appellant and the third was his girlfriend. Apparently their testimony would be cumulative of like testimony which would not show that appellant could not have committed the crimes on July 16, 1978 at the time in question. Finding no abuse of discretion, Point II is ruled against appellant.

■ Finally, appellant claims the Court erred in overruling his objection to portions of closing argument of the prosecution. Appellant failed to assert this allegation of error in his motion for new trial as required by Rule 29.11(d). Appellant requests that we invoke Rule 29.12. Review can be had on an assertion of plain error, but the facts must show manifest injustice or miscarriage of justice will result if the rule is not invoked.

■ We have read the transcripts and the briefs. The guilt of the appellant is established by overwhelming evidence. The argument of the prosecution stressed the duty of jurors, the necessity of conviction to serve as deterrence to future similar criminal conduct by others, safety in the community and evils of a minimum punishment. The remarks did not infer that appellant, if acquitted, would commit other crimes, nor were such made to create a personal hostility against defendant by the jurors.

We find no manifest injustice or miscarriage of justice. Point III is ruled against appellant. The judgment is affirmed.

REINHARD, P.J., and DONALD B. CLARK, Special Judge, concur.