STATE of Missouri, Respondent,

v.

Timothy Lee ANDERSON, Appellant.

No. WD 73029.

Missouri Court of Appeals,
Western District.

Sept. 27, 2011.

Kelly M. Jager, Clayton, MO, for Appellant.

Mary H. Moore, Jefferson City, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

JAMES EDWARD WELSH, Presiding Judge.

Timothy Lee Anderson appeals the circuit court's judgment convicting him of statutory sodomy in the first degree. First, he asserts that the court erred in overruling his motions for acquittal, contending that the State's only substantive evidence, his accuser's testimony, was so clouded with doubt that it was insufficient to create a submissible case for the jury. Second, he maintains that the court erred in allowing witness testimony that improperly bolstered his accuser's testimony. Third, he challenges the court's grant of the State's motion barring a defense witness due to late endorsement. Finally, he challenges the court's ruling that barred the same defense witness as a rebuttal witness. We affirm the circuit court's judgment.

Viewing the evidence in the light most favorable to the verdict, the evidence established that in October of 2005 Anderson offered to take ten-year-old child, B.A.J., turkey hunting. He thereafter transported her to spend the night at his residence, located one block from B.A.J.'s home. B.A.J. had spent the night at Anderson's home on prior occasions but always with Anderson's daughter present. This time, B.A.J. and Anderson were alone. Although B.A.J. had slept on the couch during prior visits, Anderson insisted that she sleep in his bed on this occasion. B.A.J. testified that no reason for this was given, that she asked to sleep on the couch, but that she ultimately complied with Anderson and slept in the bed. The child and Anderson watched television together in Anderson's bedroom; after which, he left the room, and B.A.J. fell asleep. Sometime later, B.A.J. was woken by Anderson sticking his fingers in her vagina. This lasted approximately five minutes, during which time the child remained silent. After he stopped, B.A.J. went back to sleep. When B.A.J. woke the following morning, it hurt her to urinate. The child asked Anderson to take her home. The turkey hunting excursion never occurred, as Anderson told B.A.J. that it was too late to go.

B.A.J.'s mother testified that, when B.A.J. returned home that morning, she was uncharacteristically quiet. As time passed, she observed B.A.J.'s grades drop and her personality go from being a people

person to withdrawn. For four years, B.A.J. kept this incident a secret. She attended family events where Anderson was present but was never alone with Anderson. She never again spent the night at Anderson's house. B.A.J. worried that it might happen again.

In 2009, B.A.J. disclosed the incident, first to her sister and a cousin, and then to her mother. Her mother testified at trial that B.A.J. did make a disclosure and that B.A.J. covered her face and broke into tears while disclosing. Mother testified that, after the disclosure, B.A.J. entered counseling. Her grades improved, and her personality went "back to normal."

Deputy Michael Claypole, law enforcement officer with the Livingston County Sheriff's Office, contacted Anderson regarding the allegations. Anderson was advised of his *Miranda* rights and agreed to talk to Deputy Claypole. Deputy Claypole testified that Anderson first denied knowing why Claypole wanted to talk to him but later admitted that he had been told that he "might have touched one of the girls." Deputy Claypole testified that prior to his inquiring into any specific events, Anderson volunteered that the allegations referred to a time during hunting season four years prior, that B.A.J. had slept in his bed, and that he had slept in a chair in the middle of the home.

At trial, Anderson admitted that B.A.J. spent the night at his home for the purpose of turkey hunting the following morning and that she slept in his bed due to the couch being flea infested. Although Anderson claimed that, to the best of his knowledge, he had mentioned the flea infestation in his interview with Deputy Claypole, Deputy Claypole testified that Anderson never mentioned it. Anderson denied sexual contact with B.A.J. He testi-fied that, after the day B.A.J. spent the night, he occasionally saw her at family gatherings. He reported that on those occasions she called him "Uncle Tim," greeted him with a hug, and did not try to avoid him. A jury convicted Anderson of statutory sodomy in the first degree. Anderson appeals.

In his first point on appeal, Anderson contends that the circuit court erred in overruling his motion for acquittal at the close of State's evidence, and again at the close of all evidence, because the only substantive evidence the State relied upon was the testimony of his accuser. Anderson asserts that his accuser's testimony was so clouded with doubt that it was insufficient to create a submissible case to the jury. We disagree.

■ Anderson moved for acquittal at the close of State's case and again at the close of all the evidence. We consider only the latter motion as Anderson waived any error of the former by offering evidence in his behalf. *State v. Johnson*, 447 S.W.2d 285, 286 (Mo.1969). In reviewing the sufficiency of the evidence, we accept as true all evidence favorable to the State, and "[a]ll evidence and inferences to the contrary are disregarded." *State v. Crawford*, 68 S.W.3d 406, 407–408 (Mo. banc 2002). Our review is "limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.* at 408.

■ We find the evidence in this case sufficient for a reasonable juror to find Anderson guilty of statutory sodomy in the first degree. The child victim, B.A.J., testified that in October of 2005, she spent the night at Anderson's home for the purpose of turkey hunting the following morn-

ing. Anderson confirmed her testimony. B.A.J. testified that she had spent the night at Anderson's home on previous occasions but always with someone else present. Anderson confirmed her testimony. B.A.J. claimed that Anderson asked her to sleep in his bed. Anderson confirmed her testimony. B.A.J. testified that she and Anderson never went turkey hunting the following morning because she was told by Anderson that it was too late to go. Anderson confirmed her testimony. B.A.J. testified that, after the overnight visit, she occasionally saw Anderson at family functions. Anderson confirmed her testimony. B.A.J. testified that she never again spent the night at Anderson's home. Anderson never challenged this assertion. B.A.J. testified that Anderson stuck his fingers in her vagina. To this, Anderson disagreed.

 Anderson asks us to find B.A.J.'s testimony contradictory, inconsistent, unaccompanied by sufficient corroboration, and, therefore, insufficient to create a submissible case to the jury. We do not. "It is only in those cases where the evidence of the [accusing witness] is of a contradictory nature or, when applied to the admitted facts in the case, [the] testimony is not convincing and leaves the mind of the court clouded with doubts, that [the witness] must be corroborated or a judgment cannot be sustained." *State v. Baldwin,* 571 S.W.2d 236, 239 (Mo. banc 1978). Corroboration is not required with "inconsistencies not sufficient to make the testimony inherently self-destructive." *State v. Wright,* 998 S.W.2d 78, 81 (Mo.App.1999). B.A.J.'s testimony is neither contradictory nor inconsistent. Most of her testimony in fact coincides with Anderson's testimony. Anderson suggests that B.A.J.'s testimony is contradictory and emits a "cloud of

doubt" because she testified to being scared and worried that the abuse might happen again, contradicting his own testimony that the child did not act any different at family functions. B.A.J.'s testimony was not intrinsically contradictory or contrary to admitted facts in the case, but rather her testimony was contradictory with Anderson's testimony, making it a matter of witness credibility.

 "The reliability and credibility of a witness is for the jury to decide." *State v. Sumowski,* 794 S.W.2d 643, 645 (Mo. banc 1990). "Testimony of a single witness may be sufficient to constitute substantial evidence to make a submissible case." *Id.* "It is within the jury's province to believe all, some, or none of the witness' testimony in arriving at their verdict." *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). Anderson avers that the child's testimony was the only substantive evidence relied upon. Anderson forgets that he also testified, making his evidence available for consideration as well. *Johnson,* 447 S.W.2d at 287. A first-degree statutory sodomy conviction requires proof beyond a reasonable doubt that the defendant engaged in deviate sexual intercourse with a person less than fourteen years of age. § 566.062, RSMo Cum.Supp.2005. "Deviate sexual intercourse" is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person." § 566.010(1), RSMo Cum.Supp.2005. We find the evidence sufficient for a jury to conclude beyond a reasonable doubt that Anderson was guilty of statutory sodomy in the first degree.

In point two, Anderson asserts that the circuit court erred in allowing B.A.J.'s mother to testify to out of court disclosures made by B.A.J., resulting in improper bolstering of her testimony. "As [Anderson] did not include this issue in his motion for new trial, review of this point is discretionary and error is judged upon a manifest injustice standard." *State v. Horn,* 806 S.W.2d 155, 157 (Mo.App.1991); Rule 29.11(d); Rule 30.20.

Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted there from." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. *State v. Baumruk,* 280 S.W.3d 600, 607 (Mo. banc), cert. denied, —— U.S. ——, 130 S.Ct. 144, 175 L.Ed.2d 93 (2009). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious and clear." *Id.* (citations and internal quotation marks omitted). In the absence of evident, obvious, and clear error, we

should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.* We conclude Anderson's claim does not facially establish substantial grounds for believing that he has been a victim of manifest injustice and we, therefore, exercise our discretion and decline a full plain error review.

B.A.J.'s mother testified that B.A.J. made a "disclosure," however, B.A.J.'s mother never detailed nor described the contents of the disclosure. B.A.J.'s mother testified that the disclosure came about while she was driving B.A.J. and B.A.J.'s sister to go shopping. She stated that she had a training book from work, and B.A.J.'s sister was "flipping through the book" while the mother drove. B.A.J.'s sister asked questions about the book, which contained information regarding sex offenders and victim statistics. The statistics said that one out of every four female children would be assaulted in their lifetime. The mother testified that, in the midst of talking about this, B.A.J. made a disclosure. The mother's additional testimony included her recollection of the child's behavior after returning from her overnight visit with Anderson and the child's behavior prior to, during, and after the disclosure.

"Improper bolstering occurs when the out of court statement of a witness is offered solely to be duplicative or corroborative of trial testimony." *State v. Ramsey,* 864 S.W.2d 320, 329 (Mo. banc 1993). The testimony of B.A.J.'s mother was not solely duplicative or corroborative of B.A.J.'s testimony and gave no details regarding B.A.J.'s disclosure that she had

been sodomized by Anderson. Anderson's claimed error does not meet the threshold of facially establishing substantial grounds for manifest injustice. Point two is denied.

In point three, Anderson contends that the circuit court erred in granting the State's motion to exclude a defense witness due to late endorsement. Anderson concedes late endorsement but argues that allowing the witness would not have resulted in unfair surprise or tangible prejudice to the State. He contends that barring his witness was too drastic and, therefore, was prejudicial error. We disagree.

Anderson's trial occurred on July 19, 2010. Anderson attempted to endorse his daughter, Samantha Mangiaracina, as a witness at approximately 12:46 p.m. on July 16, 2010, the Friday afternoon before the scheduled Monday hearing. This witness was not named in his March 26, 2010, answer to State's discovery request per Rule 25.05(A)(2), and no mention was made of this witness at a pre-trial hearing the morning of July 16, 2010. Prior to trial, the State orally moved to exclude the evidence per Rule 25.18, which allows for exclusion as a remedy for failure to comply with discovery rules. Anderson's justification for failing to timely call Mangiaracina as a witness was that he "assumed" the State was going to call another witness, whom he was going to use to provide the same testimony. Although he had an opportunity to subpoena the assumed witness, he did not. When he realized the assumed witness would not be called by the State, he attempted to endorse a different witness, Mangiaracina. In further defending the propriety of Mangiaracina as a witness, Anderson offered that the primary purpose of her testimony was for rebuttal anyway, thereby making endorse-

ment unnecessary. The court sustained the State's motion to exclude the witness.

Anderson testified on his own behalf during the trial. He said that, after the October 2005 overnight visit by B.A.J., he saw B.A.J. on occasion over the next four years. He said that, during those times, she greeted him as "Uncle Tim," that she gave him hugs and sat by him on the couch, and that it did not feel like she was running away from him or trying to avoid him. He stated that he "couldn't tell anything different from her" and that "she was just regular old B.A."

At the close of Anderson's evidence, he renewed his request to call Mangiaracina as a "rebuttal witness." The State argued that Anderson had already testified to what Mangiaracina was to testify to and, therefore, her testimony would be improper bolstering. The court again overruled Anderson's motion to endorse but allowed Anderson to make an offer of proof on the record. Mangiaracina's testimony in the offer of proof was that she saw Anderson and B.A.J. at family functions after October of 2005. She stated that B.A.J. called Anderson "Uncle Tim," gave Anderson hugs, sat by him on the couch, and did not appear to be running away or trying to avoid him. She indicated that she had pictures of the two sitting on the couch opening Christmas presents. She testified that both Anderson and B.A.J. acted "normal."

Discovery rules help eliminate surprise and allow both sides to become aware of trial witnesses and evidence. *State v. Martin*, 103 S.W.3d 255, 260 (Mo. App.2003). Rule 25.05(A)(2) requires a defendant in discovery to disclose any witnesses he intends to call to testify. *Id.*

Rule 25.1[8][1] offers sanctions for failure to comply with discovery rules, and exclusion of a witness is one such sanction. *Id.* The decision to exclude a witness under the rule is within the discretion of the circuit court. *Id.* "In determining whether the trial court abused its discretion, an appellate court must first consider what prejudice the State would have suffered as a result of the discovery violation and second, whether the remedy resulted in fundamental unfairness to the defendant." *Id.* Exclusion may be proper when there is no reasonable justification for failure to disclose the witness. *Id.* at 261.

Anderson gave no reasonable justification for late endorsement of the witness. Counsel stated, "It's simply because the rebuttal witness that I was planning on using is not being called."[2] Nothing prevented Anderson from himself subpoenaing the State's expected witness. The witness he then attempted to call was his daughter, lending even less credibility to the contention that the witness could not have been timely identified. *State v. Watson,* 755 S.W.2d 644, 646 (Mo.App.1988) and *State v. Harris,* 664 S.W.2d 677, 680–81 (Mo.App.1984). Further, even if the State experienced no prejudice as a result of this untimely offer, Anderson has not demonstrated that fundamental unfairness resulted from the sanction.

Anderson asserts that the primary purpose for Mangiaracina's testimony was for rebuttal—to rebut his accuser's assertions that she was scared or uncomfortable around Anderson after October, 2005. Yet, Anderson had already testified to sub- stantially everything that Mangiaracina testified to in her offer of proof. This witness's testimony offered nothing new, nothing more, and certainly nothing with regard to the material issue in the case, the sodomy charge. This witness's testimony would have been cumulative, and its exclusion did not result in fundamental unfairness to Anderson. Point three is denied.

■ In point four, Anderson contests the court's refusal to allow Mangiaracina's testimony for rebuttal. In overruling his request to enter Mangiaracina as a rebuttal witness, the court stated, "I'm still going to overrule your motion to endorse." This suggests that the court viewed with skepticism Anderson's description of Mangiaracina as a rebuttal witness after his attempt to endorse her in his case in chief. We also find Anderson's characterization of Mangiaracina as a rebuttal witness disingenuous. He attempted to endorse Mangiaracina so that she could testify in his case in chief. Undoubtedly, he hoped to rebut the testimony offered by the prosecution but that does not make her a rebuttal witness. Here, after Anderson's case in chief, the only rebuttal testimony offered by the State was the testimony of Officer Claypole and B.A.J. regarding the narrow issue of flea infestation. The State offered no other rebuttal, and, therefore, Anderson could have no rebuttal witnesses for any issue beyond flea infestation. Rule 27.02(k).

Nevertheless, on appeal Anderson contends that, because B.A.J.'s credibility was paramount to the case, Anderson should

1. Prior to December 23, 2003, the substance of Rule 25.18 was within Rule 25.16.

2. We assume counsel meant the witness whose testimony would rebut one of the State's propositions, as we understand the witness was to be called by the State in its case in chief.

have been allowed to rebut B.A.J.'s testimony via his witness, Mangiaracina. Further, he contends that he was "forced to cross-examine B.A.J. as to her credibility in front of the jury to lay a foundation for Mangiaracina's impeachment testimony." When the circuit court subsequently refused to allow the jury to hear Mangiaracina, he claims he was unfairly prejudiced because "the nature of his cross-examination of the [child] came off as unwarranted and unnecessary badgering of a young girl." We find no error in the circuit court's decision.

Prior to Anderson's offer of Mangiaracina as a rebuttal witness, Anderson had already testified to the same information to which he wanted Mangiaracina to testify. Therefore, cross-examination of the child was not only for the purpose of laying a foundation for Mangiaracina's impeachment testimony. If Mangiaracina's testimony was intended to rebut, then the same testimony by Anderson must have been likewise intended, making cross-examination of the child a necessity for laying the groundwork for Anderson's testimony as well. As discussed above in point three, Mangiaracina had nothing to offer the jury that had not already been heard, and the exclusion of Mangiaracina's cumulative testimony did not result in fundamental unfairness to Anderson. Point four is denied.

We, therefore, conclude that the circuit court did not err and abuse its discretion in overruling Anderson's motion for acquittal at the close of all the evidence because the evidence was sufficient for a jury to find Anderson guilty of sodomy in the first degree. Further, the circuit court did not err in allowing the testimony of the victim's mother. The court also committed no error in granting the State's motion to exclude Anderson's witness due to late endorsement and in barring the same witness from testifying as a rebuttal witness. We affirm the circuit court's judgment.

All concur.