STATE of Missouri, Respondent,

v.

Jerry OUSLEY, Appellant.

No. SC93074.

Supreme Court of Missouri,
En Banc.

Dec. 24, 2013.

Rehearing Denied Feb. 25, 2014.

Roxanna A. Mason, Public Defender's Office, St. Louis, for Ousley.

Timothy Blackwell, Attorney General's Office, Jefferson City, the State.

MARY R. RUSSELL, Chief Justice.

Jerry Ousley challenges his conviction for forcible rape, claiming that the trial court erred in excluding certain testimony from surrebuttal. This Court holds that, although the testimony had previously been excluded from Ousley's case-in-chief as a discovery sanction for late disclosure, this sanction did not authorize its exclusion from surrebuttal because the testimony would have rebutted the State's rebuttal evidence. Further, the trial court committed reversible error in excluding the testimony because Ousley had a right to respond to the State's new rebuttal evidence that contradicted and impeached his own testimony on his primary defense. The proffered witnesses' testimony was the best evidence he had to offer and should have been allowed in surrebuttal. The judgment is reversed, and the case is remanded for a new trial.

## I. Factual and Procedural Background

Fourteen-year-old L.M. was walking home on December 26, 1999 when a car pulled up behind her and a man she did not know got out, grabbed her and pulled her into a nearby alley. The man pushed her against the hood of a parked car, pulled down her pants and underwear, and forced penetration from behind while standing. Almost 10 years later, Ousley's DNA profile was entered into a police database, triggering a match with samples collected from L.M.'s clothing on the night of the rape. Ousley was subsequently indicted for forcible rape under section 566.030.[1]

On the Friday before trial, Ousley moved to endorse three witnesses: his mother, grandmother, and a hospital records custodian. He also disclosed medical records for treatment that he received for a gunshot wound three weeks prior to the alleged rape. The State moved to exclude the witnesses and medical records as a discovery sanction for late disclosure. At the hearing on the motion, Ousley's trial counsel stated that the newly disclosed witnesses and evidence would be key to Ousley's defense that he could not have committed forcible rape on December 26 because of the injuries he suffered when he was shot three weeks earlier. The State countered that Ousley did not have a reasonable justification for the late disclosure and that allowing him to offer the evidence at trial would be unfair to the State. The trial court excluded the testimony of Ousley's mother and grandmother as a discovery sanction, but allowed him to offer the testimony of the records custodian and to admit the medical records.

At trial, Ousley's primary defense was that he was incapable of forcible compulsion at the time of the alleged rape. He introduced the medical records showing that he received treatment in a hospital emergency room on December 2 and December 3, 1999 for a gunshot wound. Ousley testified that he was shot in the back and that the bullet fractured a bone in his lower back. He stated he was told that the bullet was lodged near his spine, and that he should stay off his feet for a while because there was a risk the bullet could move and damage his spine. He reported that, although he was afraid of being paralyzed, he did not have a follow-up visit or physical therapy because he did not have

1. All statutory references are to RSMo 2000 unless otherwise indicated. Section 566.030 provides that "[a] person commits the crime of forcible rape if such person has sexual intercourse with another person by the use of forcible compulsion." Section 566.010(4) defines "sexual intercourse" as "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results."

health insurance. Instead, he spent most of the following month in bed or on crutches. He testified specifically that around Christmas time in 1999 he was still on crutches and was only able to "limp and hop."

Ousley did not directly rebut the State's claim that he had sexual intercourse with L.M. but instead argued that, if he had sexual intercourse with her, it must have been consensual because he was not capable of forcible compulsion. Ousley testified that, although he does not remember L.M., he was very promiscuous at that time in his life. He stated that he was able to have sex in the weeks after he was shot, but he maintained that his injury would have made it difficult for him to have sex in certain positions, including standing up. He further stated that he would have had sex at his apartment around the time of the alleged rape as he was otherwise unable to get around and that he never had sex with anyone in the alley where L.M. reported being raped.

The trial court did allow Ousley to make an offer of proof of his mother's and grandmother's testimony during his case in chief. Both witnesses testified that they lived with Ousley in December 1999, and they recalled that he had considerable difficulty getting around for a significant period of time after he was shot. His grandmother, who "saw him every day," stated that he was in bed for at least two weeks after the shooting, and he was on crutches and "unable to get around well" for about two months after that. His mother, who saw him less frequently because she was working at the time, testified that he was unable to move around very much in the month after he was shot. She specifically remembered that he "laid around in our way" during a family gathering on Christmas Day.

The trial court allowed the State to call the doctor who had treated Ousley, Dr. Rebecca Aft, as a rebuttal witness. Dr. Aft testified that the gunshot wound caused a fracture in Ousley's right iliac bone and a muscular hematoma. Her testimony was that the fracture did not require further treatment, but that the muscular hematoma would have caused some short-term pain and discomfort. Dr. Aft stated that the bullet was not lodged near Ousley's spine, and his injuries did not pose a risk of paralysis. She testified that he was discharged with an approximately one-week supply of Tylenol No. 3 for pain and instructions to "ambulate and resume all his normal daily activities, except contact sports." No follow-up visit was ordered, nor was one necessary. Dr. Aft testified that she had treated injuries like Ousley's before and, in her experience, a person with a similar injury would not have had difficulty walking or standing even the day after the injury and should have fully recovered three weeks after the injury. On cross-examination, she conceded that Ousley did not have a follow-up visit with her and she did not have personal knowledge of his condition on December 26.

Ousley then sought to offer his mother and grandmother as surrebuttal witnesses. His trial counsel argued that their testimony regarding their personal observations of Ousley would rebut Dr. Aft's testimony that Ousley should have been pain-free and ambulatory three weeks after the injury. The State objected on the grounds that allowing the witnesses to testify in surrebuttal would allow "an end run around" his late disclosure. The trial court excluded the witnesses' testimony from surrebuttal.

The jury convicted Ousley of forcible rape, and he was sentenced to 15 years in

prison. He timely appealed. This Court has jurisdiction. Mo. Const. art. V, sec. 10.

## II. Analysis

Ousley claims that the trial court erred in excluding his mother and grandmother from testifying as surrebuttal witnesses. He also argues the trial court improperly restricted voir dire by preventing him from questioning the venire panel for bias related to teenage consensual sexual activity. Finally, Ousley requests plain error review of the forcible rape verdict director given by the trial court.

### A. Exclusion of Ousley's Mother and Grandmother from Testifying in Surrebuttal

■ In a criminal case, the purpose of surrebuttal evidence is to give the defendant an opportunity to rebut or respond to the State's rebuttal evidence. *State v. Forsha*, 190 Mo. 296, 88 S.W. 746, 755–56 (1905). As with rebuttal evidence, the trial court has discretion over the availability and scope of surrebuttal evidence, and its decision denying or limiting surrebuttal will not be disturbed absent an abuse of that discretion. *See State v. Huff*, 454 S.W.2d 920, 923 (Mo.1970); *State v. Williams*, 442 S.W.2d 61, 65 (Mo. banc 1968).

Ousley argues that the trial court erred in excluding his mother and grandmother from testifying in surrebuttal. The record in this case does not reveal why the trial court excluded these witnesses,[2] but it appears the trial court may have done so for one of two reasons: first, because it believed the discovery sanction that excluded their testimony from Ousley's case-in-chief also excluded it from surrebuttal; or, second, because it concluded the witnesses' testimony was not admissible in surrebuttal.

■ The discovery rules provided no basis for excluding Ousley's mother and grandmother from testifying in surrebuttal. The disclosure obligations of Rule 25.03 and Rule 25.05 do not apply to witnesses whose testimony will be in the nature of rebuttal or surrebuttal. *See State v. Curtis*, 544 S.W.2d 580, 582 (Mo. banc 1976). Although Ousley did not endorse his mother and grandmother until the Friday before trial, these witnesses, who were offered in surrebuttal, did not have to be endorsed. *State v. Cameron*, 604 S.W.2d 653, 657 (Mo.App.1980) ("whether a witness may be a proper rebuttal witness is determined by the trial court without regard to Rule 25.05, and rebuttal witnesses need not even be endorsed"). The ques-

2. The trial transcript contains this exchange following Ousley's request to offer his mother and grandmother as surrebuttal witnesses:

THE COURT: [T]he issue in my mind is whether he can now call them if he was precluded from doing it, so—because of the scheduling order and the other issues that came up.... If their testimony hadn't been—if they hadn't been precluded from being called in the defendant's case because of the procedural issue, if that wasn't the situation, and he didn't call them in his case, I'm not sure he can call them now to rebut the medical report from [Dr. Aft].
...
PROSECUTION: He's trying to an [sic] end run around his failure to notice.... I think

the issue is he doesn't get the benefit of surrebuttal because he didn't follow the rules of disclosure.
...
THE COURT: I'm not going to let you do it. The jury hasn't heard it, but I'm going to sustain the state's objection.
DEFENSE: Just so we're clear, it's my understanding that the rules of discovery do not apply to rebuttal or surrebuttal.
THE COURT: Are you asking me a question or just wanting to put something on the record?
DEFENSE: No, I just wanted to put it on the record, and we're on the record, the testimony which would directly surrebut.

tion, then, is whether the trial court erred in excluding these witnesses on the ground that their testimony was not admissible during surrebuttal.

■ To be admissible in surrebuttal, evidence must be relevant and otherwise admissible. *See State v. Taylor*, 589 S.W.2d 302, 303–04 (Mo. banc 1979); *State v. Peterson*, 518 S.W.2d 1, 3 (Mo.1974). In addition, evidence offered in surrebuttal must be commensurate with surrebuttal's purpose to rebut or respond to the State's rebuttal evidence. *Forsha*, 88 S.W. at 755–56. Evidence is not inadmissible in surrebuttal merely because it "is not strictly or entirely rebuttal evidence," *State v. Sawyer*, 365 S.W.2d 487, 491 (Mo. 1963), but evidence that does not directly rebut or goes beyond the State's rebuttal is not proper surrebuttal evidence. *Taylor*, 589 S.W.2d at 303–04.

■ Here, Ousley made a proffer of his mother's and grandmother's testimony during his case-in-chief, and there is no dispute that their testimony would have been relevant and admissible. Further, when offering their testimony in surrebuttal, Ousley's trial counsel explained that his mother and grandmother would contradict Dr. Aft's testimony regarding Ousley's condition with their personal observations around the time of the alleged rape. In doing so, their testimony would have rebutted the crucial point of the State's rebuttal evidence that he was physically capable of committing forcible rape and, in doing so, corroborated and bolstered Ousley's own testimony.

■ A defendant, though, is generally not entitled to surrebuttal as a matter of right, and the trial court's decision denying surrebuttal will not be set aside unless it was abuse of discretion. *See Huff*, 454 S.W.2d at 923; *Forsha*, 88 S.W. at 755–56. Under this standard, the trial court's deci-sion will be overturned if it is "clearly against the logic of the circumstances." *See State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009).

■ Ousley's primary defense to the charge of forcible rape was that he was incapable of the forcible compulsion alleged by the State due to his injuries from a gunshot wound. This made Ousley's physical condition at the time of the alleged rape a central issue to be resolved by the jury. During rebuttal, the trial court permitted the State to present new evidence contradicting Ousley's testimony about this issue. Dr. Aft's testimony that Ousley should have fully recovered by the time of the alleged rape contradicted the crux of his defense and called his truthfulness into question.

Ousley had a right to respond to this rebuttal testimony by offering the testimony of his mother and grandmother. Their testimony was the best evidence he could offer to corroborate his physical condition at the time of the alleged rape and to bolster his own testimony. Ousley did not see Dr. Aft or another doctor for a follow-up visit, so there was no physician who could testify about his physical condition after his emergency room treatment. Indeed, the hole in Dr. Aft's testimony was her admission that she had no personal knowledge of Ousley's physical condition after he left the hospital. Ousley's mother and grandmother would have exploited that gap, testifying from their personal knowledge that he was still unable to get around well several weeks after the shooting. In doing so, these witnesses would have contradicted the State's rebuttal evidence and corroborated and bolstered Ousley's own testimony.

The trial court has discretion to determine the availability and scope of rebuttal and surrebuttal. *See Huff*, 454 S.W.2d at 923; *Forsha*, 88 S.W. at 755–56. But, like

an umpire, the trial court has to call it both ways. Once the trial court exercised its discretion to admit the State's rebuttal evidence, its discretion to exclude the defendant's proffered surrebuttal evidence was limited. When the trial court allowed the State in rebuttal to present new evidence that contradicted the defendant's testimony and undermined his primary defense on a central issue, the trial court should have allowed the defendant to respond with admissible surrebuttal evidence that directly contradicted the rebuttal evidence to protect his rights to a fair trial and to present a complete defense. *See Sawyer*, 365 S.W.2d 487; *State v. Lewis*, 137 S.W.2d 465, 467 (Mo.1940) ("Where a court admits evidence in rebuttal and then gives the defendant full opportunity to explain or rebut such evidence, no rights of the defendant are violated.").

■■■■ The State argues that the trial court did not abuse its discretion in excluding Ousley's mother and grandmother from testifying in surrebuttal because their testimony would have been merely cumulative. The trial court may consider whether proffered testimony would restate facts already in evidence when determining whether surrebuttal is warranted. *See Huff*, 454 S.W.2d at 923. But not all testimony that restates the factual basis for a criminal defendant's primary defense is "merely cumulative." Compare *State v. Williams*, 119 S.W.3d 674, 679 (Mo.App. 2003) (finding reversible error in excluding from surrebuttal "the best evidence that Appellant could offer to the jury in support of his proffered defense," without which "the jury was left only with Appellant's bare, unsubstantiated assertion"), with *State v. Anderson*, 348 S.W.3d 840, 847–48 (Mo.App.2011) (affirming exclusion of proffered surrebuttal evidence because the evidence did not rebut the State's rebuttal

evidence or corroborate a contradicted point of the defendant's testimony).

Ousley's primary defense that he was incapable of forcible compulsion at the time of the alleged rape was a central issue for the jury to resolve. This defense was supported by Ousley's testimony during his case-in-chief, which was then contradicted by Dr. Aft in rebuttal. This contradiction in the evidence made the weight to be given to Ousley's testimony a critical issue for the jury to decide. Ousley's mother's and grandmother's testimony would have corroborated his testimony, and it would have also rehabilitated his credibility. Their testimony was not "merely cumulative," and its corroboration of Ousley's testimony did not justify its exclusion.

■■■■ Additionally, the trial court's ruling will be reversed only if the defendant was prejudiced, which requires a reasonable probability that the trial court's error affected the outcome of the trial. *See State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007). The excluded testimony, if believed by the jury, would have bolstered Ousley's defense of consent and corroborated his testimony, thereby rehabilitating his credibility. Further, because the excluded testimony would have contradicted the State's evidence of a necessary element of the crime, this Court cannot conclude that admission of the testimony would not have affected the outcome of trial. Ousley's conviction is reversed on this point.

## B. Improper Restriction of Voir Dire

■■■ Ousley also claims the trial court improperly restricted voir dire by preventing him from questioning the venire panel for bias related to teenage consensual sexual activity. Discussion of this issue requires a brief recitation of additional facts. At the beginning of the State's voir dire,

the prosecuting attorney informed the venire panel that Ousley was accused of forcibly raping a 14–year–old in 1999. The State then received questions from several venire members regarding the lapse of time since the offense. One venire member asked the prosecuting attorney whether the jury would learn Ousley's age in 1999. The following exchange then occurred:

VENIREPERSON HARLAN: I want to know, will we know how old he was in '99?

MS. SZCZUCINSKI: You'll learn that information during the course of trial. . . . Will that affect your ability at all to make a decision?

VENIREPERSON HARLAN: Well, yeah.

MS. SZCZUCINSKI: How so?

VENIREPERSON HARLAN: Because, like, they was saying, anything like she was promiscuous or just like, I don't know, maybe he was close in age.

MS. SZCZUCINSKI: Okay. Now, Miss Harlan, let me ask you this then: If you were to learn that they were close in age, okay, are you going to automatically say no way could there have been forcible rape if they're close to the same age?

VENIREPERSON HARLAN: No.

MS. SZCZUCINSKI: So you could see that there could be that circumstance?

VENIREPERSON HARLAN: Yeah, I just wanted to know how old he was at the time.

Later, defense counsel sought to ask the venire members "[w]hether they can consider the possibility or do they automatically rule out the possibility of two teenagers that had consensual sex." However, the State objected that the question was improper, and the trial court sustained the objection.

Ousley claims that the trial court's decision infringed on his right to a fair and impartial jury. A defendant's right to a fair and impartial jury includes the right to an adequate voir dire. *State v. Clark*, 981 S.W.2d 143, 146 (Mo. banc 1998). There is no rigid formula for an adequate voir dire. Consequently, "a liberal latitude is allowed in the examination of jurors," *State v. Granberry*, 484 S.W.2d 295, 299 (Mo. banc 1972), as long as the scope of voir dire remains commensurate with its purpose "to discover bias or prejudice in order to select a fair and impartial jury," *Clark*, 981 S.W.2d at 146. Whether the trial court deprives a defendant of an adequate voir dire by barring a particular question depends on the context of the case, *id.* at 146, as well as "the information sought" and "the manner of asking," *State v. Garrett*, 627 S.W.2d 635, 642 (Mo. banc 1982).

In determining whether the defendant is entitled to seek particular information on voir dire, the court must strike a balance between the competing mandates that "counsel may not try the case on voir dire," *Clark*, 981 S.W.2d at 146, and "voir dire requires 'the revelation of some portion of the facts of the case,'" *id.* at 147(quoting *State v. Leisure*, 749 S.W.2d 366, 373 (Mo. banc 1988)). Otherwise, biased jurors "could respond affirmatively, personally confident that [their] dogmatic views are fair and impartial, while leaving the specific concern unprobed." *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). At a minimum, the trial court must allow a defendant to inquire into the "critical facts" of the case. *Clark*, 981 S.W.2d at 147. Critical facts are those "with substantial potential for disqualifying bias." *Id.*

Here, the ages of L.M. and Ousley at the time of the alleged rape were critical

facts into which Ousley's trial counsel should have been allowed to inquire during voir dire. Some jurors could have harbored disqualifying biases related to teenage consensual sexual activity. Because consent is a defense to the charge of forcible rape, Ousley had a right to inquire of the venire panel whether his and L.M.'s ages would affect the venire members' decisions as to consent. The State was allowed to explore one form of bias related to teenage sexual activity during its voir dire, i.e., whether a potential juror would assume sex between two teenage persons who were close in age was consensual. In asking whether any venire member would automatically believe that sex between two teenage persons was not consensual, Ousley sought to explore the opposite bias. It is possible that some prospective jurors had strongly held personal beliefs regarding teenage sexual activity that would have led them to conclude a 14–year–old girl could never consent to sexual activity. That, however, is not the law. Accordingly, defense counsel should have been allowed to probe for this form of bias on voir dire.

Nor would this line of questioning have exposed the jury to a prejudicial presentation of facts not yet in evidence. Ousley's proposed question would have exposed the jury to at most one new fact: Ousley was a teenager at the time of the alleged rape. The question presented the jury with only the portion of the facts of the case likely to give rise to disqualifying bias, and with no more of the facts than were required to discover the targeted bias.

■ The State argues that the question was argumentative and sought to elicit an improper commitment from the venire members. Of course, the purpose of exposing prospective jurors to critical facts of the case is to discover bias, not to create bias. Questions may not be phrased in such a way as to "attempt to elicit a commitment from jurors how they would react to hypothetical facts" or "seek to predispose jurors to react a certain way to anticipated evidence." *Clark*, 981 S.W.2d at 146–47. "[W]hen the inquiry includes questions phrased or framed in such a manner that they require the one answering to speculate on his own reaction to such an extent that he tends to feel obligated to react in that manner, prejudice can be created. The limitation is not as to the information sought but in the manner of asking." *Garrett*, 627 S.W.2d at 642.

The proposed question was not argumentative, and it did not seek an improper commitment. Instead, it asked whether prospective jurors would "consider" the possibility that sexual intercourse between L.M. and Ousley was consensual. It was possible that he and L.M. had lawful, consensual sex.[3] The question did not ask jurors to commit to a finding of consent or rule out the possibility of rape. It merely sought to determine whether there were any potential jurors for whom the issue of forcible compulsion would be a foregone conclusion if Ousley and the alleged victim were both teenagers.

It is true that Ousley argued that, if sexual intercourse between he and L.M. occurred, it was consensual. But not every question that asks whether a venireperson would "automatically" reach a conclusion seeks an improper commitment.

---

**3.** The offense commonly referred to as "statutory rape" punishes as any person who has sexual intercourse with another person who is younger than 14 years old, or a person who is at least 21 years old who has sexual intercourse with a person who is younger than 17 years old. See sections 566.032, 566.034. The offense had the same definition in 1999. See sections 566.032, 566.034, RSMo 1994.

*See State v. Ezell,* 233 S.W.3d 251, 253 (Mo.App.2007) (noting there "is a tendency by counsel and sometimes courts, to jump to the conclusion that every question containing the words 'would you believe/disbelieve automatically,' connected to some fact of the case, improperly seeks a commitment"). Here, the proposed question merely sought to ensure, in light of the critical facts of the case, that the prospective jurors could follow the law regarding sexual intercourse among minors and would not impose legal consequences even if they believed the sex was consensual. Because Ousley had a right to ask the venire panel members whether they could consider the possibility that two teenagers had consensual sexual intercourse, and the question he posed was not improper, the trial court abused its discretion in prohibiting him from asking it.[4]

### C. Ousley's Claimed Instructional Error

██ Ousley also claims that the trial court erred in giving the verdict director for forcible rape because the instruction given did not conform to the applicable Missouri Approved Instruction (MAI). Although at trial Ousley and the State agreed to use the forcible rape verdict director from MAI–CR 2d, the parties now agree that the verdict director from MAI–CR 3d was applicable. Both verdict directors require the jury to find two elements, sexual intercourse and forcible compulsion. But they differ in that the verdict director in MAI–CR 3d also requires the jury to find that the defendant "knowingly" committed the crime of forcible rape, while the verdict director in MAI–CR 2d does not require a mental state. Ousley argues that the trial court erred in giving an instruction that did not conform to the applicable MAI, and that he was prejudiced because the omission of the third element excused the state from proving a required element of the crime. Because this error was not preserved, Ousley seeks plain error review under Rule 30.20.

██ "[P]lain error review is discretionary when manifest injustice or miscarriage of justice has resulted." *State v. Tisius,* 92 S.W.3d 751, 767 (Mo. banc 2002). "For instructional error to rise to the level of plain error, appellant must demonstrate that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice." *State v. Cooper,* 215 S.W.3d 123, 125 (Mo. banc 2007). Ousley fails to make the required showing. He fails to demonstrate how the trial court's failure to instruct the jury that it must find that he "knowingly" committed the crime of forcible rape resulted in a manifest injustice or a miscarriage of justice. This claim is denied.

### III. Conclusion

The judgment is reversed because the trial court erred in excluding Ousley's mother's and grandmother's testimony in surrebuttal. The case is remanded for a new trial.

BRECKENRIDGE, FICHER, STITH, WILSON, and TEITELMAN, JJ., concur.

DRAPER, J., dissents.

4. To find that the trial court committed reversible error in restricting Ousley's voir dire, this Court must find that the trial court abused its discretion and that Ousley was prejudiced. *See State v. Baumruk,* 280 S.W.3d 600, 614 (Mo. banc 2009). Although the trial court abused its discretion, this Court need not address whether he was prejudiced, because he is entitled to a new trial on his surrebuttal claim.