STATE of Missouri, Plaintiff–
Respondent,

v.

Paul Ray ROSE, Defendant–Appellant.

No. SD 32168.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 30, 2013.

Stuart Huffman, Springfield, MO, for appellant.

Shaun J. MacKelprang, Jefferson City, MO, for respondent.

MARY W. SHEFFIELD, Judge.

Paul Ray Rose ("Defendant") appeals his conviction for one count of first-degree statutory sodomy. *See* § 566.062.[1] He raises five points on appeal: (1) there was insufficient evidence to support his conviction; (2) the trial court erred in preventing him from cross-examining D.W. ("Victim") regarding her alleged prior false allegations of sexual abuse; (3) the trial court plainly erred in giving Instruction 5 for failing to specify the conduct required to find Defendant guilty beyond a reasonable doubt; (4) the trial court erred in allowing the State to cross-examine Defendant's character witness regarding Defendant's prior bad acts; and (5) the trial court erred in not making a record regarding a plea offer Defendant rejected prior to going to trial. These arguments are without merit, and Defendant's conviction is affirmed.

### *Factual and Procedural Background*

During the summer of 2010, Victim was twelve years old and lived with her mother, Defendant, and her three younger brothers. Defendant was the boyfriend of Victim's mother.

That summer, Victim had a slumber party where she told her friends Defendant had touched her inappropriately. The next morning, Victim asked one of her friends to speak to her mother for her. She did, and then Victim's mother spoke with Victim. Victim disclosed the abuse to her mother. Ultimately, the situation was reported to the authorities, and an investigation was conducted. Defendant was charged with one count of first-degree statutory sodomy and, in the alternative, one count of first-degree child molestation.

At trial, Victim described a number of incidents. She testified Defendant put his hands down her pants and put his fingers in her vagina. Victim stated Defendant called this action a "wedgy" and it happened over twenty times in various places in the home. She also described an incident with a hose at the waterslide that occurred in the yard, and another incident where Defendant rubbed her on the outside of her pants as she sat on his lap.

The jury found Defendant guilty of first-degree statutory sodomy. This appeal followed.

### *Discussion*

### *Point I: Sufficiency of the Evidence*

In his first point, Defendant argues the evidence was insufficient to support his conviction because it was circumstantial and contradictory. Defendant's argument is without merit because it ignores the standard of review.

██ "In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable finder of fact might have found the defendant guilty beyond a reasonable doubt." *State v. Paulson,* 220 S.W.3d 828, 832 (Mo.App. S.D.2007) (quoting *State v. Bewley,* 68 S.W.3d 613, 617 (Mo.App. S.D.2002)). "This Court accepts as true all evidence tending to prove guilt along with all reasonable inferences that support the guilty finding while all contrary evidence and inferences are disregarded." *Id.* Furthermore, in conducting

---

1. All statutory references are to RSMo Cum. Supp. (2011).

this review, this Court "does not act as a super juror with veto powers," but "gives great deference to the trier of fact." *State v. Wright*, 382 S.W.3d 902, 903 (Mo. banc 2012) (quoting *State v. Miller*, 372 S.W.3d 455, 463 (Mo. banc 2012)) (internal quotation marks omitted). That is, the appellate court "does not determine the credibility of the witnesses." *Paulson*, 220 S.W.3d at 832.

■ "The State has the burden to prove each and every element of a criminal case." *State v. Peeples*, 288 S.W.3d 767, 770 (Mo.App. E.D.2009). To prove a charge of first-degree statutory sodomy the prosecution must show the defendant "ha[d] deviate sexual intercourse with another person who [was] less than fourteen years old." § 566.062.1. Deviate sexual intercourse is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim[.]" § 566.010(1). Furthermore, "[v]ictim testimony, even if uncorroborated, is generally sufficient to sustain a sexual offense conviction." *State v. Robertson*, 396 S.W.3d 475, 477 (Mo.App. S.D. 2013). *See also State v. Anderson*, 348 S.W.3d 840, 844 (Mo.App. W.D.2011); *Paulson*, 220 S.W.3d at 834.

■ Here, Victim testified Defendant put his fingers in her vagina during the summer of 2010. She also stated she was 12 years old during the summer of 2010. This evidence was sufficient to support Defendant's conviction for first-degree statutory sodomy. *See Robertson*, 396 S.W.3d at 477.

■ Defendant's arguments to the contrary ignore evidence favorable to the verdict and the deference this Court must give to the trier of fact. He primarily points to conflicts in Victim's testimony regarding collateral matters and discrepancies between Victim's testimony and the testimony of other witnesses. Those inconsistencies and discrepancies were for the fact-finder to assess in determining the relative credibility of the witnesses and the weight of the evidence. *See, e.g., Paulson*, 220 S.W.3d at 833 (noting that the corroboration rule does not apply to inconsistencies regarding collateral matters); *Anderson*, 348 S.W.3d at 844 (holding that the victim's testimony was sufficient to support a conviction for statutory sodomy even though it conflicted with the defendant's denial of the offense).

In sum, Defendant's arguments are simply attempts to have this Court reweigh the credibility of the various witnesses presented at trial. Under the proper standard of review, we cannot do this. *Paulson*, 220 S.W.3d at 832. Defendant's first point is denied.

### Point II: Prior False Allegations

■ In his second point, Defendant argues the trial court erred in prohibiting him from cross-examining Victim about her alleged prior false allegations of sexual abuse. This claim was not preserved for appellate review.

Prior to trial, the prosecutor filed a motion in limine to exclude evidence of prior sexual abuse or prior allegations of sexual abuse made by Victim. The parties discussed the issue during hearings prior to trial. The prosecutor stated Defendant's attorney told her during discovery that Victim's mother reported Victim had made false allegations in the past. The prosecutor then made the following disclosures to the court:

So this is what the State did. The State asked for information about who they were talking about. And one of the individuals is a person from Nevada. The State has a certified copy of the record where that defendant pled guilty with regards to sexual offenses involving the victim in this case and has provided that to defense counsel.

The second person is an alleged former boyfriend of the mother of the victim in this case. I believe that is the connection. They were unable to provide a last name of the boyfriend. They provided an information generally speaking with regards to somewhere in Kansas and a general vicinity of where that was.

Bob Alexander, who is an investigator in our office at that time, has contacted law enforcement agencies in Kansas in that—in the geographic area provided as well as prosecutor's offices.

The State has not found any information that indicates there was actually ever a report filed anywhere.

Based on that information, the prosecutor argued the allegations were not admissible because the allegations were not false. The issue was not discussed again prior to the presentation of evidence, and defense counsel did not attempt to question Victim regarding the prior allegations.

As Defendant concedes, this claim is not preserved for appellate review because he did not make an offer of proof at trial. Defendant's second point is denied.

### Point III: Instruction 5

In his third point, Defendant claims the trial court plainly erred in giving the verdict director for first-degree statutory sodomy, Instruction 5, because that instruction "did not specify what conduct the jury had to find in order to convict appellant beyond a reasonable doubt." Because of this deficiency, Defendant contends, the instruction violated his right to a unanimous verdict. Although Defendant's argument based on *State v. Celis–Garcia*, 344 S.W.3d 150 (Mo. banc 2011), is correct, he is not entitled to reversal because he failed to prove manifest injustice or miscarriage of justice.

Defendant concedes his claim was not preserved for review because he did not object to the giving of the instruction at trial. Nevertheless, this Court has discretion to review unpreserved claims for plain error. Rule 30.20 [2]; *Celis–Garcia*, 344 S.W.3d at 154. "Plain error review involves a two-step analysis." *State v. Ralston*, 400 S.W.3d 511, 520 (Mo.App. S.D.2013). "First we determine if there was plain error, *i.e.*, evident, obvious and clear error affecting the defendant's substantial rights." *Id.* at 520–21. "If we find plain error, our second step is to 'decide whether the error actually resulted in manifest injustice or a miscarriage of justice.'" *Id.* at 521 (quoting *State v. Dean*, 382 S.W.3d 218, 224 (Mo.App. S.D.2012)). "[T]he defendant bears the burden of establishing manifest injustice." *Id.* at 522 (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)). Furthermore, "[a] claim of plain error places a much greater burden on a defendant than an assertion of prejudicial error." *Id.* at 520 (quoting *Dean*, 382 S.W.3d at 224). "For instructional error to constitute plain error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict." *State v. Tisius*, 362 S.W.3d 398, 411 (Mo. banc 2012) (quoting *Celis–Garcia*, 344 S.W.3d at 154) (internal quotations omitted).

**2.** All rule references are to Missouri Court Rules (2013).

The Missouri Constitution's guarantee of the right to a trial by jury includes the right to a unanimous jury verdict. *Celis–Garcia,* 344 S.W.3d at 155. This requires the jurors to "be in substantial agreement as to the defendant's acts[.]" *Id.* (quoting 23A C.J.S. *Criminal Law* § 1881 (2006)). For this reason, jury instructions in "multiple acts" cases must be modified to ensure each juror agrees the defendant committed the same criminal act that the other jurors find the defendant committed. *See id.* at 158 ("Because it is impossible to determine whether the jury unanimously agreed on any one of these separate incidents, the verdict directors violated Ms. Celis–Garcia's constitutional right to a unanimous jury verdict").

"A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Id.* at 155–56. "To determine if a case is a multiple acts case, courts consider the following factors: '(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.'" *Id.* at 156 (quoting 75B Am.Jur.2d *Trial* § 1511).

The evidence suggests this is a multiple acts case. Victim testified Defendant touched her vagina more than twenty times. These acts occurred on various days in different rooms of the home and yard. As the acts occurred at different times and in different locations and by their very nature involved intervening events and fresh motives, this is a multiple acts case. Hence, we must next determine

whether the verdict director in this case sufficiently specified the act so the jurors each agreed to the same act in finding Defendant guilty.

In a multiple acts case, the defendant's right to a unanimous verdict may be protected in one of two ways. *See id.* at 157. The first option requires the prosecution to elect "the particular criminal act on which it will rely to support the charge[.]" *Id.* The second option requires the verdict director to specifically describe the separate criminal acts and instruct the jury "that it must agree unanimously that at least one of those acts occurred." *Id.*

Neither of those options were chosen in this case. Instruction 5 read as follows:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that between June 1, 2010 and August 15, 2010, in the County of Christian, State of Missouri, the defendant knowingly placed his finger inside the vagina of [Victim], and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at that time [Victim] was a child less than fourteen years old,

then you will find the defendant guilty under Count I of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the

male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

Although the jury was instructed to consider the counts separately, there was no instruction informing them they all had to agree Defendant committed the same criminal act. Thus, as in *Celis–Garcia*, this case presents a situation where there was evidence of multiple acts and where the case was submitted to the jury with a single, generic verdict director. Consequently, Instruction 5 failed to ensure a unanimous verdict, and the trial court erred in giving it.

That conclusion does not end our inquiry, however. We must also consider whether Defendant has demonstrated manifest injustice or a miscarriage of justice. *See Ralston*, 400 S.W.3d at 511. As stated above, "[f]or instructional error to constitute plain error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict." *Tisius*, 362 S.W.3d at 411 (quoting *Celis–Garcia*, 344 S.W.3d at 154) (internal quotations omitted).

▆▆▆ "The outcome of plain error review, furthermore, depends heavily on the specific facts and circumstances of each case." *Ralston*, 400 S.W.3d at 520 (quoting *Dean*, 382 S.W.3d at 224). In a multiple acts case where the verdict directing instruction is insufficiently specific to ensure a unanimous verdict, the determination of whether the error resulted in manifest injustice often depends on the strategy the defendant employed at trial. For example, manifest injustice has been found where the defense is offense specific and depends upon raising doubts regarding the plausibility of the specific incidents. *Celis–Garcia*, 344 S.W.3d at 158–59. In contrast, where the defense simply argues

the victim fabricated his or her whole story, courts generally do not find manifest injustice. *E.g.*, *State v. LeSieur*, 361 S.W.3d 458, 465 (Mo.App. W.D.2012); *State v. Johnson*, 62 S.W.3d 61, 69 (Mo. App. W.D.2001).

▆▆▆ In the present case, the defense was not offense specific. Rather, the defense argued Victim fabricated her story and that nothing happened. This is demonstrated by the defense closing argument. Defendant's attorney argued Victim had been subjected to outside influences throughout the entire investigation, and she had made up the story because Defendant was too strict with her. Since the defense employed a unitary strategy, Defendant's total denial of any inappropriate touching, that applied to all the incidents equally, Defendant was not subjected to manifest injustice as a result of the error in Instruction 5.

Defendant's third point is denied.

### *Point IV: Prior Bad Acts*

In his fourth point, Defendant claims the trial court erred in allowing the prosecution to cross-examine his character witness "about past investigations by childrens [sic] division, an ongoing federal tax investigation and other prior bad acts[,]" because the questions were improperly phrased. Defendant's argument is not supported by the record.

The following additional facts are relevant to the disposition of this point. One of the witnesses Defendant presented was Sandra Kay Cloud ("Cloud"). She testified she had known Defendant since 2004. She further stated Defendant's reputation in the community was good.

On cross-examination, the prosecution asked whether Cloud was "aware that [Defendant has] been investigated by the Christian County Sheriff's Department in

2007 for domestic assault second[.]" Defendant objected, stating "prior bad act and outside of the scope of—of direct."

The judge summoned the parties to the bench to discuss the issue. The prosecutor argued the State was entitled to ask about specific instances of prior misconduct to test the witness's base of knowledge regarding Defendant's reputation. The trial court overruled the objection.

When the proceedings returned to open court, the prosecutor asked the question again, and Cloud responded the investigation did not affect her opinion with regards to Defendant's reputation because "[i]nvestigation is nothing." The prosecutor then asked if Cloud was "aware of the fact that ... the federal government is seeking an indictment on the defendant for five felony counts for failing to pay taxes and for five misdemeanor counts on failing to file a tax return[.]" Defendant objected on the basis of hearsay, and the trial judge overruled the objection. Cloud said she was aware of the IRS investigation, and the investigation did not affect her opinion of Defendant's reputation in the community. Then the prosecutor asked, "[a]re you aware of the fact that the Division of Social Services, excluding the case that we're here for today, has been to the house with regards to making—for contact of reports that are made with regards to this defendant and abuse of the children in the home?" Cloud replied that she was aware of this investigation but, again, investigations did not affect her opinion. The prosecutor also asked about Defendant's marital history and several acts committed towards children. Defendant objected to only one of those questions on the basis that the information sought was irrelevant, hearsay, and outside the scope of direct examination. The trial court overruled that objection.

Defendant's claim is not preserved because Defendant makes a different challenge on appeal than he did in the trial court. "To properly preserve a matter for appellate review, the trial objection must be specific, and the point raised on appeal must be based upon the same theory presented at trial." *State v. Goins*, 306 S.W.3d 639, 645–46 (Mo.App. S.D.2010) (internal quotations omitted). "It is incumbent on the objecting party to make the basis of his objection reasonably apparent to the court in order to provide the opponent an opportunity to correct the error and the court to correctly rule on it." *Id.* at 646 (quoting *State v. Boydston*, 198 S.W.3d 671, 674 (Mo.App. S.D.2006)). Furthermore, "[a] point on appeal must be based upon the theory voiced in the objection at trial and a defendant cannot expand or change on appeal the objection as made." *Id.* at 647 (quoting *State v. Cannady*, 660 S.W.2d 33, 37 (Mo.App. E.D. 1983)).

Here, Defendant objected on the basis of "prior bad act." While that objection is related to the claim made on appeal, it is not the same. On appeal, Defendant tacitly admits the information itself was admissible, but merely challenges the phrasing of the prosecutor's questions. If that challenge had been made below, any error could have been easily corrected. By changing the grounds for his challenge on appeal, Defendant failed to preserve this point for review.

Defendant's fourth point is denied.

### Point V: Record of Plea Offer

In his final point, Defendant argues the trial court erred in failing to make a record showing Defendant understood the ramifications of rejecting a prior plea offer made by the State. He cites *Missouri v. Frye*, —— U.S. ——, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), in support. This argu-

ment rests on a misconception of the holding in *Frye*.

The following additional facts are relevant to the resolution of this point. Prior to trial, the parties, including defendant, appeared in court. The judge recited a plea offer the State had made which involved a guilty plea to a misdemeanor charge. The judge stated Defendant had rejected the plea offer because of the terms of probation. The prosecutor affirmed the judge provided a correct summary of the situation, and announced the State was withdrawing the plea offer. Defense counsel informed the trial court he had nothing to add.

Defendant concedes this point was not preserved for appellate review because it was not contained in his motion for new trial. Consequently, review is for plain error, under the standard outlined above in conjunction with Point III.

■■■ Defendant's claim fails because the holding in *Frye* does not require the trial court to make a record regarding rejected plea offers. In *Frye*, the defendant alleged he had received ineffective assistance of counsel when his attorney failed to inform him of a plea offer before the plea offer lapsed. 132 S.Ct. at 1404. The United States Supreme Court addressed two questions: (1) whether a criminal defendant had a right to effective assistance of counsel during plea negotiation; and (2) what the defendant had to prove to demonstrate prejudice arising from ineffective assistance of counsel during plea negotiation. *Id.* The Court held (1) the defendant did have a right to effective counsel in plea negotiation; and (2) to show prejudice he would have to demonstrate he would have accepted the offer, the offer would not have been withdrawn by the prosecutor, and the offer would have been accepted by the court, with the result that the outcome of the proceedings

would have been more favorable to the defendant. *Id.* at 1407, 1409. The Court did not discuss or decide the scope of the duties of the trial court during the rejection of a plea offer. In fact, the Court seemed to accept that a record would not generally be available, noting that when a plea offer is rejected, "no formal court proceedings are involved." *Id.* at 1407.

Furthermore, there is no statute or rule requiring the trial court to make a record when a plea offer lapses or is rejected. To the contrary, the trial court's duties begin when a plea offer is accepted. For example, Rule 24.02(d) prohibits the trial court from participating in plea negotiations. Furthermore, Rule 24.02(d)(2) provides "[i]f a plea agreement *has been reached* by the parties, the court shall require the disclosure of the agreement on the record in open court or, on a showing of good cause, in camera, at the time the plea is offered." (emphasis added) Thus, the rule requires a record of plea negotiation only when a plea offer has been accepted.

We find no error, plain or otherwise. Defendant's final point is denied.

### *Decision*

The trial court's judgment is affirmed.

DANIEL E. SCOTT, P.J. and DON E. BURRELL, C.J., concur.