OPINION CONCURRING IN PART AND DISSENTING IN PART
Paul C. Wilson, Judge
Based on the inconsistent, post-hoc testimony of one venireperson who claims he overheard another venireperson make an ambiguous comment to a third venireper-son (who unequivocally denied hearing the comment), the principal opinion holds not only that the trial court was permitted to find sufficient juror nondisclosure to warrant a new trial, it holds that the trial court had no choice but to make that finding. This conclusion departs from the applicable standard of review, it deprives the trial court of the deference due its superior ability to make difficult factual findings, and it suggests that a fact finder is only free to believe or disbelieve all or any part of the evidence if it reaches the right answer. Because the record amply supports the trial court’s conclusion that Ess failed to prove his juror bias claim, I respectfully dissent.
I. Juror Nondisclosure
The principal opinion holds that the trial court abused its discretion in denying Ess’s claim that Juror No. 3 intentionally failed to disclose in voir dire that he had formed a premature opinion about the case in violation of the trial court’s instructions. But that is not the claim Ess made, either in the trial court or in this Court. The claim that Ess asserted in his new trial motion — and the claim that the trial court overruled — was that Juror No. 3 was biased against Ess and that he failed to disclose this bias when asked. The two claims are distinct, and Ess is entitled only to appellate review of the claim he brought, not the claims he might have brought. By the same token, the trial court is entitled to be reviewed only on the decision it made, not a decision it might have made had Ess raised a different claim.
Ess’s new trial motion does not argue that Juror No. 3 was not sufficiently impartial to serve as a juror under section 494.470.2, RSMo 2000, and it does not claim that Juror No. 3 committed misconduct by drawing a premature conclusion about the case prior to deliberations.[1] In *210 stead, the only claim regarding Juror No. 3 that Ess raised in his new trial motion is that Juror No. 3 committed misconduct by “failing to disclose that he was biased against the defendant” and that this juror made a comment during a break in voir dire that “reveals a bias existing at the outset of the trial, a bias that [Juror No. 3] intentionally did not disclose during voir dire.”[2] [Emphasis added.]
Ess claims that Juror No. 3 intentionally faded to disclose that he was biased against Ess. “Allegations of nondisclosure are not self-proving and must be proven.” State v. McFadden, 391 S.W.3d 408, 418 (Mo. banc 2013). For Ess to prove that Juror No. 3 failed to disclose that he was biased against him, Ess must first prove that Juror No. 3 actually was biased against him. See State v. Mayes, 63 S.W.3d 615, 626 (Mo. banc 2001) (rejecting nondisclosure claim for failure to prove the fact that allegedly was not disclosed).
Any argument that this Court should presume Juror No. 3 was biased against Ess is circular. To be clear, bias will be presumed when a venireperson intentionally fails to disclose certain facts. But such a presumption does not arise unless and until the claimant proves an intentional nondisclosure of those facts in the first instance. Accordingly, Ess cannot rely on a presumption that Juror No. 3 was biased in order to prove that Juror No. 3 failed to disclose he was biased.
The trial court’s analysis of Ess’s new trial motion focused initially on whether Ess had proved that an intentional nondisclosure occurred. As this Court has stated,
In determining whether to grant a new trial for juror nondisclosure, the court first must determine whether a nondisclosure occurred at all. Nondisclosure can occur only after a clear question is asked during voir dire. An unequivocal question triggers a venireperson’s duty to disclose. Silence to an unequivocal question establishes juror nondisclosure if the information is known to the juror.
Saint Louis Univ. v. Geary, 321 S.W.3d 282, 295 (Mo. banc 2009) (internal citations omitted).
As Geary makes plain, a claimant seeking to prove an intentional nondisclosure must establish that the venireperson is consciously aware of an objective fact and then fails to disclose that fact despite an unequivocal request to do so from the court or counsel. In the past,, the only “fact” that has met this definition is the juror’s objectively verifiable involvement in other litigation. Johnson v. McCullough, 306 S.W.3d 551, 558 (Mo. banc 2010) (finding intentional nondisclosure when juror concealed “numerous and recent” similar lawsuits); Brines By & Through Harlan v. Cibis, 882 S.W.2d 138, 139 (Mo. banc 1994) (same); Williams By & Through Wilford v. Barnes Hosp., 736 S.W.2d 33, 38 (Mo. banc 1987); Beggs v. Universal C.I.T. Credit Corp., 387 S.W.2d 499, 503-04 (Mo. banc 1965). See also Smith v. Brown & Williamson Tobacco Corp., 410 S.W.3d 623, 643 (Mo. banc 2013) (noting it is permissible to inquire whether a juror concealed a belief “that all litigation of a certain type is frivolous”).
This case presents a very different situation. Here, the “fact” that Ess claims was the subject of the intentional nondisclosure *211 was Juror No. 3’s “bias existing at the outset of the trial.” Juror No. 3 did not admit this “fact” as the jurors did in Harlan, Wilford, and Beggs. Nor did Ess prove this “fact” with objectively verifiable records as the claimant did in Johnson. Instead, Ess gave the trial court little to go on other than the inconsistent testimony of Venireperson 26, who claims he overheard Juror No. 3 make a remark to Juror No. 11. Ess offered no corroboration for this testimony. To the contrary, Juror No. 11 denied hearing the statement Juror No. 3 supposedly made, and the only person who claimed to have heard it — i.e., Venireperson 26 — did not mention it to anyone until after the trial was over and he learned of the verdict. Finally, there was no evidence as to what Juror No. 3 meant by this comment even if he did make it.
Nor is Venireperson 26’s testimony, on its own, so compelling to merit the principal opinion’s holding that the trial court abused its discretion in refusing to find it sufficient. The trial court specifically noted that Venireperson 26 could not make up his mind what he heard. In his affidavit, he alleged that Juror No. 3 said the case was “open and shut.” At the hearing, he testified that Juror No. 3 said the case was “cut-and-dry.” Then, when Ess’s counsel pointed out this inconsistency, Venireper-son 26 retreated and said the comment was that the case was “open and shut.”
More importantly, the trial court relied heavily on the fact that Juror No. 11 not only did not hear Juror No. 3 make the “open and shut” comment (or the “cut-and-dry” comment), Juror No. 11 testified unequivocally that he did not “gather or perceive that [Juror No. 3] had a preconceived bias or notion about the case.” [Emphasis added.] This Court, time and again, has stated that the finder of fact is free to believe all, any, or none of the evidence presented. Smith, 410 S.W.3d at 623, 639. Under the principal opinion, however, the trial court was not free to disbelieve Venireperson 26’s testimony no matter how inconsistent and uncorroborated it was.
The trial court made a detailed analysis of the evidence presented and plainly found Venireperson 26’s testimony was not sufficient to establish Ess’s claim. The court never found that Juror No. 3 made the comment (or any version of it). That was a question of fact and, under Smith, 410 S.W.3d at 639, this Court must presume it was found in accordance with the trial court’s decision. In other words, this Court must presume the trial court found Juror No. 3 did not make the statement Venireperson 26 claims he heard. That presumption is amply justified here because the trial court evidently was swayed by the fact that Venireperson 26 told two different stories, neither of which was corroborated by Juror No. 11 or anyone else. The trial court also noted that Venireper-son 26 never claimed to have heard this comment until after the trial was over, even though he was asked at the end of voir dire whether there was anything he (or anyone else) needed to divulge to the court (and was told he could make this disclosure confidentially). Under the principal opinion, however, the trial court was required to ignore all of this and accept Venireperson 26’s testimony as a true and sufficient basis on which to grant a new trial.
Finally, even if Juror No. 3 made the “open and shut” comment (or the “cut-and-dry” comment, as the case may be), there was no evidence from any source as to what Juror No. 3 meant and whether this comment really demonstrated the “bias existing at the outset of the trial” that Ess alleged. The trial court specially noted the lack of evidence regarding the context, *212 tone, or meaning of the comment, which suggests that the trial court understood this comment does not necessarily reveal a bias against Ess. The principal opinion ignores the “even if’ character of this analysis, however, and assumes that it must mean the trial court believed Juror No. 3 made the comment(s) Venireperson 26 claims he heard. That is the antithesis of the deference this Court is supposed to give to the finder of fact, and it is as logically faithful to the trial court’s order as an appellate court compelling the trial court to grant summary judgment in favor of a plaintiff because, in an earlier motion to dismiss, the defendant assumed all of the allegations were true.
In addition, the principal opinion suggests that the trial court abused its discretion when it “relied on” language in Mayes to deny Ess’s new trial motion because he failed to submit an affidavit from the juror who supposedly committed the nondisclosure. Not only does the record not support the principal opinion’s suggestion, it explicitly refutes it. The trial court did not dismiss Ess’s claim of intentional nondisclosure for lack of an affidavit from Juror No. 3. To the contrary, the trial court held a hearing, received evidence, and entertained written suggestions and argument of counsel. Following the hearing, the trial court issued a written order analyzing the evidence and concluding it was insufficient to support the claim.
True, prior to its substantive discussion of Ess’s claim, the trial court noted the misleading language from Mayes, 63 S.W.3d at 615, 626.[3] But, far from “relying on” that language, the trial court’s order never mentions Mayes again. Nowhere does the trial court suggest that Mayes was dispositive of the claim, or even “partially” dispositive, as the principal opinion suggests. No matter what evidence Ess did (or did not) attach to his motion, the trial court’s decision was based on the evidence Ess offered at the hearing. It was this proof that the trial court concluded was “not sufficient ... to support Defendant’s contention that juror three intentionally concealed a bias or prejudice against defendant.”[4]
Ess chose to rely almost exclusively on the testimony of Venireperson 26.[5] Not *213 only was the trial court free to disbelieve all of any part of that testimony, it had several very good reasons for doing so. That finding is well supported by the record and is entitled to deference. Accordingly, I would hold that the trial court did not abuse its discretion in denying Ess’s claim of intentional nondisclosure.

II. Instructional Error Regarding Unanimous Jurg Verdicts

Because there are no valid grounds for reversing Ess’s convictions on the basis of juror nondisclosure, the Court should reach — and reject — Ess’s claim that Instruction No. 5 and Instruction No. 8 violated his right to a unanimous jury verdict because neither instruction identified a particular act of sodomy — or required the jury to agree on a particular act of sodomy — from among the many incidents described in the evidence. Because Ess did not raise these objections at trial or in his new trial motion, they are to be reviewed — if at all — only for plain error.
Under Rule 30.20, plain error review is discretionary, and it “is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review.” State v. Jones, 427 S.W.3d 191, 195 (Mo. banc 2014). When a party seeks appellate review of a defaulted claim of trial error, this Court must first determine whether the claim concerned substantial rights such that, if error is shown, a manifest injustice or a miscarriage of justice could have resulted. Id. Second, this Court must determine whether the claimed error was “plain,” i.e., whether it was “evident, obvious, and clear.” Id. Finally, the Court must consider whether a miscarriage of justice or manifest injustice will occur if the claimed error is left uncorrected. Id. The first two threshold elements evaluate the nature of the claimed error, but the last element examines the effect of the claimed error in the particular case. “Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of establishing manifest injustice.” State v. Baxter, 204 S.W.3d 650, 652 (Mo. banc 2006) (citing Mayes, 63 S.W.3d at 624).
The first two elements of this inquiry are resolved by this Court’s holding in State v. Celis-Garcia, 344 S.W.3d 150 (Mo. banc 2011). In that case, the Court considered the situation when “there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count.” Celis-Garcia, 344 S.W.3d at 155-56. This Court held that the verdict director in such a case will violate the defendant’s right to a unanimous jury verdict under article I, section 22(a) of the Missouri Constitution unless it not only describes the criminal acts with specificity but also instructs the jury “to agree unanimously on at least one of the specific criminal acts described in the verdict director.” Id. at 158. Because the instructions there had not met these criteria, the Court found them erroneous under plain error review.
Instructions No. 5 and No. 8 in this case are similarly deficient. Instruction No. 5 provided that the jury was to find Ess guilty of first-degree sodomy if it found beyond a reasonable doubt that Ess committed deviate sexual intercourse by putting his mouth on W.L.’s genitals between January 1, 1995, and April 30, 1998, when W.L. was less than 14 years old. Instruction No. 8 provided that Ess was guilty of second-degree sodomy if the jury found *214 beyond a reasonable doubt that Ess committed the same conduct between May 1, 1998, and May 1, 2000, when W.L. was less than 17 years old and Ess was more than 21 years old. There was evidence at trial that Ess had orally sodomized W.L. on multiple occasions — “sometimes nightly”— during each of the time periods listed in the ■ instructions. Accordingly, Instructions No. 5 and No. 8 in this case were erroneous because they do not describe specific acts of sodomy committed by Ess against W.L. in the separate time periods and they do not insist that the jury unanimously find that one or more of those acts occurred.
The inquiry does not end there, however. To warrant relief for plain error, Ess must also show that the erroneous instructions actually resulted in a miscarriage of justice or manifest injustice in his case. Because he cannot, his claim is distinguishable from Celis-Garcia and does not merit reliefi[6]
In Celis-Garcia, this Court found not only that the challenged instructions were erroneous but had also resulted in manifest injustice or a miscarriage of justice because:
Unlike some statutory sodomy cases in which the defense simply argues that the victims fabricated their stories, Ms. Celis-Garcia sought to exploit factual inconsistencies and raise doubts about the plausibility of the specific incidents of statutory sodomy alleged by her daughters. [....]
[ ... TJhe fact that Ms. Celis-Garcia relied on evidentiary inconsistencies and factual improbabilities respecting each specific allegation of hand-to-genital contact makes it more likely that individual jurors convicted her on the basis of different acts. The Court finds that the verdict directors misdirected the jury in a way that affected the verdict, thereby resulting in manifest injustice. *215 Celis-Garcia, 344 S.W.3d at 158-59 (emphasis added).
This conclusion was based upon the understanding that the more the defendant (or the state) invites the jury to distinguish between the various criminal incidents— any one of which is sufficient to convict— the higher the risk that jurors will return a verdict that appears unanimous but is not. This increased risk justified the Court’s decision to grant relief under plain error in Celis-Gareia, but there is no such increased risk in the present case and, therefore, no basis for relief.
Ess did not assert the type of incident-by-incident defenses that were raised in Celis-Gareia, and Ess did not plead with the jury to evaluate the incidents one at a time as was argued in Celis-Gareia. Instead, Ess defended the numerous acts collectively and urged the jury to do the same. In closing argument, Ess’s counsel stated that the jury:
... ha[d] been given nothing beyond the allegations themselves in this case. There is not one bit of corroborating evidence, nor is there anything that Tom Ess or myself on Tom Ess’s behalf is in a position to present to you as some sort of smoking gun to refute those allegations.
Ultimately, Ess’s counsel told the jury that it was “their word against his” and that “the only evidence [Ess] had [was that] he said he didn’t do this stuff, and ... other people say it’s not in his character to tell you a lie.” Because these arguments do not invite the jury to' consider each of the acts of sexual abuse separately, they do not increase the risk of a conviction on less than a unanimous verdict from the theoretical to the likely, as occurred in Celis-Gareia.
Ess insists that he did have incident-specific defenses. In particular, Ess claims that he “had available” specific defenses for abuses occurring in each of four bedrooms in the house, citing accounts from W.L. and other witnesses regarding when W.L. had moved from one bedroom to another. Some of these, such as the argument that Ess could not be guilty of the mouth-to-genital contact described in Instruction No. 5 because W.L. was at least 14 when it occurred, do not invite the jury to consider different instances of abuse separately, but to acquit him of the charge altogether. More importantly, the jury never heard these “available” arguments; they are raised for the first time on appeal.
At trial, Ess’s argument to the jury was that, based on the inconsistencies in the children’s statements, the jury should conclude the children were lying and disregard their evidence completely. But neither Ess nor the state invited the jury to distinguish between the many acts described in the evidence. As a result, there is no sound basis for this Court to conclude that the jury did so and no basis to conclude that, if the instructions had detailed the acts and expressly required unanimity on one act per count, the trial would have ended any differently.[7]

HI. Conclusion

For the reasons set forth above, I respectfully dissent from the principal opinion’s holding that Ess’s convictions must *216 be vacated and a new trial conducted because the trial court abused its discretion by not believing the conflicting and uncorroborated testimony of a single venireper-son regarding what another venireperson said to a third venireperson (who did not hear it). Instead, I would reverse Ess’s conviction and sentence as to Count V and affirm each of the other convictions and sentences in all respects.[8]

. I agree with the principal opinion that the trial court did not abuse its discretion in ruling that Ess’s new trial motion was timely. The claims raised in Ess’s new trial motion are preserved, therefore, and appellate review of those claims is not dependent solely on this Court’s discretion under the plain error doctrine. But such review is limited to those claims actually asserted in the motion for new trial. State v. Pullen, 843 S.W.2d 360, 362 (Mo. banc 1992) (claims not asserted in new trial motion are not preserved for review). Counsel’s oral argument can no more raise new claims that were not raised in the written motion than an untimely oral motion for new trial can substitute for a written motion altogether. The language of Ess’s motion controls. The trial court’s order plainly identifies — and rejects — the claim that Ess raised, *210 but it is not the claim on which this Court now reverses and grants Ess a new trial.

. Ess's new trial motion also stated that Juror No. 3 had “communicated” his bias to others during the voir dire recess. The trial court treated this as a claim of improper communication, and its denial of this claim is not challenged on appeal.

. The single phrase of Mayes to the contrary notwithstanding, a movant need not submit an affidavit of the allegedly offending juror to make out a claim of intentional nondisclosure. See Mayes, 63 S.W.3d at 626 (nondisclosure claim was overruled due to "counsel’s failure to call the juror or otherwise establish the facts") (emphasis added). See also Johnson, 306 S.W.3d at 558 (affirming finding of intentional nondisclosure without an affidavit when juror’s "numerous and recent” litigation experiences were shown by Case.net records).

. Even if the circuit court had improperly "relied on” a reading of Mayes, that is no cause for reversal. Because "appellate courts are primarily concerned with the correctness of the trial court’s result, not the route taken by the trial court to reach that result,” the judgment "must be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient.” Rouner v. Wise, 446 S.W.3d 242, 249 (Mo. banc 2014) (internal quotations and citations omitted). Here, that theory is that Ess failed to prove his claim.

. Even though Ess was entitled to bring his nondisclosure claim without testimony from Juror No. 3, that does not mean that the trial court was prohibited from considering that Ess — as the party with the burden of proof— failed to offer it straight from the “horse’s mouth” or offer an explanation for why this particular "horse” was not heard from at all. See Johnson, 306 S.W.3d at 558 (noting that, although evidence was sufficient to establish nondisclosure, "the better practice here would have been for the party seeking a new trial to have deposed [the juror], obtained an affidavit, or had her testify”). Moreover, Mayes itself stands for the proposition that the movant will lose a juror nondisclosure claim when evidence of nondisclosure is ambiguous *213 and this Court is left to "speculate as to whether any nondisclosure occurred at all, much less intentional nondisclosure.” Mayes, 63 S.W.3d at 626.

. Claims of instructional error are particularly ill-suited for plain error analysis when the decision not to object to the state’s instructions may have been motivated by reasonable trial strategy. If an appellate court (or a trial court acting under Rule 29.12) denies plain error review of such a claim, the defendant may still raise the issue in a post-conviction claim of ineffectiveness of counsel and a record can be made as to whether the decision not to object was a reasonable trial strategy. But, in Celis-Garcia, for example, no record regarding the motivation for defense counsel’s decision not to object was created — or even appropriate — because the issue was decided as a matter of plain error on direct appeal. As a result, it will never be known whether the decision not to object to the state’s instructions in Celis-Garcia was a matter of trial strategy even though the subsequent history of that case shows such a strategy would not have been unreasonable. There, the defendant was charged — and the jury was instructed — only on two counts of first-degree statutory sodomy; one count for each of the defendant’s two minor children, with both counts covering all acts within a 15-month tíme period. The defendant did not object to those charges or to the state’s proffered instructions. In fact, she offered alternative instructions using this same two-count approach. Celis-Garcia, 344 S.W.3d 154 n. 3. She was convicted and sentenced to concurrent 25-year sentences. On direct appeal, the defendant argued that the trial court committed plain error in giving the instructions proffered by the state. This Court agreed and vacated the defendant’s convictions. Id. at 159. On remand, the state expanded the charges to reflect each specific act that the defendant committed against each specific victim. At trial, the state proffered jury instructions consistent with those charges and the evidence, and the jury convicted her on 10 counts of first-degree statutory sodomy, six counts of first-degree child molestation, and one count of statutory rape. State v. Celis-Garcia, 420 S.W.3d 723, 725 (Mo.App.2014). Based on the jury's recommendations, she was given -11 life sentences and six 15-year sentences, with three of her life sentences and two of her 15-year sentences to be served • consecutively. Id.

. Similar analyses have been used in the lower courts to affirm convictions even when a unanimous verdict violation is shown under Celis-Garcia. See State v. Rose, 421 S.W.3d 522, 529 (Mo.App.2013); State v. LeSieur, 361 S.W.3d 458, 465 (Mo.App.2012) (reversal unwarranted when "defense was common to all of the sexual encounters described by the victim: a general attack on her credibility, and emphasis on the supposed implausibility of the account she gave”).

. I concur in the principal opinion's conclusions that the evidence was sufficient to support Ess’s conviction under Count II (i.e., first-degree statutory sodomy of W.L.) but insufficient to support his conviction under Count V (i.e., attempted child molestation of B.L.).