Colby L. SANDERS, Movant-Appellant,

v.

STATE of Missouri, Respondent-Respondent.

No. SD 34428

Missouri Court of Appeals, Southern District, Division Two.

Filed: December 13, 2017

Attorney for Appellant—Mark A. Grothoff of Columbia, MO.

Attorneys for Respondent—Joshua D. Hawley (Attorney General) and Shaun J. Mackelprang of Jefferson City, MO.

Before Rahmeyer, P.J., Lynch, J., and Scott, J.

## PER CURIAM.

On February 16, 2017, this Court issued an opinion in this cause and transferred it, pursuant to Rule 83.02,[1] to the Supreme Court of Missouri. The issue that was pending in the Supreme Court of Missouri at the time of our opinion was whether an "order of notification" was an appointment of counsel. On November 2, 2017, the Supreme Court entered an order re-transferring the cause to this Court in light of two opinions entered on April 25, 2017, *Creighton v. State*, 520 S.W.3d 416 (Mo. banc 2017), and *Hopkins v. State*, 519 S.W.3d 433 (Mo. banc 2017). `

In *Creighton* and *Hopkins*, the Supreme Court held that an order of notification was not an appointment of counsel to the public defender. *Creighton*, 520 S.W.3d at 421; *Hopkins*, 519 S.W.3d at 436. Although Movant did not include a copy of the order of notification in the legal file, Case.net shows that the order of notification stated:

> [T]he Court orders the Circuit Clerk to notify the Central Appellate Division for the State Public Defender of the filing of this 24.035 [*sic*] action and to provide the State Public Defender with a copy of Movant's Form 40.

> The Circuit Clerk is ordered to furnish to the State Public Defender any and all pleadings from this file or the underlying criminal case that the State Public Defender may request.

Subsequent to our opinion, the Supreme Court considered an identical order of notification in *Hopkins v. State*, 519 S.W.3d 433 (Mo. banc 2017), and concluded it was not an appointment and, "The Rule 29.15(g) filing period commenced when Movant's public defender entered his appearance." *Id.* at 436. As a result, Movant's amended motion for post-conviction relief in this case was filed timely.

We now consider the merits of Movant's appeal. In this case, Movant was charged with eight separate offenses—four involved B.S., two involved A.S. and two involved L.S. The trial court also instructed the jury on eight offenses and one lesser included offense—the first four and the one lesser included offense involved B.S., the next two involved A.S., and the final two involved L.S.[2] In Instruction No. 5 (Count I—child molestation in the first degree), which is at issue, the instruction required the jury to find that Movant "touched [B.S.] with [his] genitals."[3] Movant sought relief claiming trial counsel was

---

1. All rule references are to Missouri Court Rules (2017), unless otherwise specified.

2. The jury found Movant not guilty of Counts II and IV (penis to B.S.'s mouth, and sexual intercourse with B.S.), and guilty of Counts I and III (touched B.S. with genitals, and hand of B.S. to penis) and Counts V through VIII (A.S. and L.S.). Movant waived sentencing by the jury, and the trial court sentenced Movant to concurrent terms of imprisonment on each offense—fifteen years on Counts I and V and forty years on Counts III and VI through VIII. On direct appeal, we affirmed the trial court's judgment except that we reversed as to Count VIII. *State v. Sanders*, 449 S.W.3d at 819.

3. Additionally, Instruction No. 7 (Count II) required the jury to find that Movant "knowingly touched his penis to the mouth of [B.S.]." The second and third elements in Instruction No. 7 differed from the second and third elements in Instruction No. 5. Instruction No. 9 (Count III) required the jury to find that Movant "knowingly touch[ed] the hand of [B.S.] to his penis." The second and third elements in Instruction No. 9 differed from the second and third elements in Instruction No. 5. Instruction No. 11 (Count IV) and the related lesser included offense instruction required the jury to find that Movant "knowingly had sexual intercourse with [B.S.]," or "tried to have sexual intercourse with [B.S.]."

ineffective for failing to object to Instruction No. 5, which arguably could have been met in four separate instances of conduct on the part of Movant.[4]

 Movant claims that though individually each of the four events would have qualified under the verdict director, there is no guarantee that the jury unanimously found Movant guilty of the same event. The motion court denied Movant's amended motion following an evidentiary hearing. Under the *Strickland*[5] standard, the

4. At trial, B.S. testified that Movant touched her with Movant's genitals on four separate occasions. Any of those four occasions fit within Instruction No. 5. Additionally, in his opening closing argument, the prosecutor argued in part with respect to Count I:

> ... the defendant touched ... [B.S.] with his genitals. Now, you heard her testify ... about him touching her leg, that I believe it was in ... what ... they call the living room[.]
> ... the defendant took her clothes off, ... placed his ... penis on her leg ... [.]
> And you also heard on the CAC that she talked about it again. The same thing that he did, that, again, that his penis touched her and her leg. And she actually ... describes it that at one time ... he ejaculated.
> ....
> So ..., I submit that we've met our burden and leave you firmly convinced that the defendant ... touched [B.S.] with his genitals.

Later in his opening closing argument in the course of arguing that B.S. was credible, the prosecutor stated:

> ... you recall on the CAC she had the doll and she positioned the defendant as the male doll and her as the female doll, right on top.
> And she described that and did motions like ... she was sitting on top of him. She said in the CAC that he placed her there, moved back and forth.

Then, in his reply closing argument, the prosecutor told the jury:

> ... Who got the most attention from the defendant? [B.S.] Who got molested most by the defendant? [B.S.] Who had the most sexual attacks by the defendant? [B.S.], because she's the favorite.

motion court made the following findings and conclusions on Movant's claim:

> Without a addressing whether or not a reasonable attorney would have objected to Instruction No. 5, the Court first determines whether or not Movant has demonstrated that "a reasonable probability exists that, but for defense counsel's ineffectiveness, the result at trial would have been different." *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002).
>
> ....
>
> ... I submit to you that I've met my burden. And you should be firmly convinced that that man is guilty of molesting [B.S.] That that man is guilty of raping [B.S.]

5. As set forth in *Hoeber v. State*, 488 S.W.3d 648, 653, 655, 659 (Mo. banc 2016):

> To establish ineffective assistance of counsel, a movant must prove "by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Dorsey v. State*, 448 S.W.3d 276, 286–87 (Mo. banc 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If a movant fails to satisfy either prong of the *Strickland* test, he or she is not entitled to post-conviction relief. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).
>
> To satisfy the performance prong, movants "must overcome the strong presumption that counsel's conduct was reasonable and effective." *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013). This presumption is overcome when a movant identifies "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.* (internal quotation omitted).
>
> ....
>
> There is "a presumption that counsel's alleged omissions were sound trial strategy." *Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005) (internal quotation omitted).

The Eastern District has held that while the use of a vague jury instruction failing to specify incidents is in error, it can be non-prejudicial if it has no effect on the jury's verdict when the record is viewed as a whole. *Barmettler v. State*, 399 S.W.3d 523, 530 (Mo. App. E.D. 2013). When a defense is based on pure fabrication of all incidents, it is not offense specific. *State v. Celis–Garcia*, 344 S.W.3d 150, 158-159 (Mo. banc 2011). A defense must be offense specific in order for the erroneous instruction to create a "manifest injustice" that prejudices the defendant. *State v. Rose*, 421 S.W.3d 522, 529 (Mo. App. S.D. 2013).

Given that Movant's entire case was based on the unitary defense the victims had fabricated the allegations, Movant's defense was not affected by Instruction No. 5. Therefore, Movant has no evidence to support the claim that Movant suffered prejudice from Instruction No. 5 being given to the jury.

We note that if a motion court could dispose of Movant's claim for lack of prejudice, it should do so. *Sidebottom v. State*, 781 S.W.2d 791, 796 (Mo. banc 1989).

In a single point, Movant claims the motion court "clearly erred in denying" his amended motion as to Count I because trial defense counsel was constitutionally ineffective in failing to object to Instruction No. 5 (the verdict director for Count I—child molestation in the first degree) "on the basis that the instruction did not identify the specific conduct the jury had to find in order to convict" Movant. Because we are bound by the most recent precedent of our Supreme Court, as set forth in *Hoeber v. State*, 488 S.W.3d 648 (Mo. banc 2016),[6] we reverse the motion court and remand for the motion court's consideration of trial counsel's performance.

### Prejudice analysis per *Hoeber*

In *Hoeber*, a jury found Hoeber guilty of two counts of statutory sodomy in the first degree. *Id.* at 650. Both verdict directors "failed to identify a specific act or incident of abuse despite testimony at trial regarding multiple incidents" of inappropriate touching. *Id.* at 650, 653. In a motion for post-conviction relief under Rule 29.15, Hoeber claimed in part that his trial counsel was ineffective "for failing to object to verdict directors that violated his constitutional right to a unanimous jury verdict." *Id.* At an evidentiary hearing on Hoeber's motion, trial defense counsel testified that "he did not consider objecting on the basis that the verdict directors failed to specify a particular incident or place in which the touchings occurred. He further testified that he had no trial strategy for failing to object to the verdict directors." *Id.* at 653. The motion court denied Hoeber's motion on this ground because Hoeber "did not establish that he was prejudiced by his trial counsel's failure to object to the verdict directors because there was no risk that the jurors would be misled about which incidents of abuse applied to a particular count," and did not determine whether trial counsel's performance was deficient. *Id.* at 653, 658.

The Supreme Court reversed and remanded, concluding that a unitary defense did not preclude prejudice and that Hoeber was prejudiced by his trial counsel's deficient performance stating:

Trial counsel's failure to object to the insufficiently specific verdict directors

---

**6.** The decision by the trial judge was entered in March of 2016. *Hoeber* was decided in May of 2016.

submitted to the jury undermines this Court's confidence in the reliability of the verdicts. At trial, the jury heard conflicting statements about multiple incidents of hand-to-genital contact. The state's case was not focused on or limited to any specific acts or incidents of sexual abuse. Rather, the state argued that Mr. Hoeber had abused [the victim] multiple times and at least on two occasions. Because there was evidence of multiple, separate incidents of statutory sodomy, any of which would have supported the charged offenses, and neither verdict director specified a particular act or incident, there was no requirement that jurors agree on the same act to find Mr. Hoeber guilty on either count of statutory sodomy. The verdict directors, therefore, created a real risk that the jury verdicts were not unanimous. Despite this substantial threat to the unanimity of the jury verdicts, Mr. Hoeber's trial counsel failed to object to the insufficiently specific verdict directors. Accordingly, trial counsel's failure to object to the erroneous verdict directors prejudiced Mr. Hoeber.

*Id.* at 657-58. In reaching its prejudice finding, the *Hoeber* court held that to the extent *State v. LeSieur*, 361 S.W.3d 458 (Mo. App. W.D. 2012), and its progeny, such as *Rose*, 421 S.W.3d at 529, suggest that a defendant "could not suffer prejudice from insufficiently specific verdict directors just because he employed a general or unitary defense[,]" they "should no longer be followed." *Hoeber*, 488 S.W.3d at 657.

In this appeal, the State, in its closing argument, appeared to combine at least three alleged incidents of potential, genital-to-leg contact with B.S. into a single incident or fewer than three incidents. As in *Hoeber*, the verdict director for Count I in this case did not require the jury to agree on the same act from among multiple possible acts, and created a real risk that the jury's verdict was not unanimous. We therefore must find that the motion court's finding and conclusion that there was no prejudice to Movant, premised upon Defendant's unitary defense and *Rose*, is clearly erroneous and cannot stand.

 Finding the motion court's lack of prejudice finding clearly erroneous, however, does not resolve all of the issues. The motion court did not address or make any findings whether trial counsel's decision not to object was reasonable trial strategy per *Strickland*.

Although courts may not indulge *"post hoc* rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, *Wiggins [v. Smith]*, 539 U.S. [510,] 526–527, 123 S.Ct. 2527, 156 L.Ed.2d 471 [2003], neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) *(per curiam)*. After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind. 466 U.S., at 688, 104 S.Ct. 2052.

*Harrington v. Richter*, 562 U.S. 86, 109-10, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

Recognizing that "[a]fter an adverse verdict at trial even the most experi-

enced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome," the Supreme Court has emphasized that *Strickland* "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 131 S.Ct. at 790; *see also Jennings v. McDonough*, 490 F.3d 1230, 1247 (11th Cir. 2007) (explaining that "[t]he *Strickland* standard of objective reasonableness does not depend on the subjective intentions of the attorney, judgments made in hindsight, or an attorney's admission of deficient performance").

*O'Neal v. Burt*, 582 Fed.Appx. 566, 572 (6th Cir. 2014). Such may be the current case.

Evidence presented at the hearing on Movant's amended motion for post-conviction relief showed an exceptionally experienced defense counsel. She graduated from law school in 1993, and began working for the Federal Public Defender's Office in Springfield, Missouri. In 2006, trial defense counsel left the Federal Public Defender's Office and "started [her] own practice," which was "almost exclusively criminal [defense]." At the time of trial in this case in early December 2012, trial defense counsel had participated in numerous jury trials (trial counsel estimated she participated in at least two jury trials each year of her career). When asked by Movant on direct examination why she did not object that "any one of the four acts ... might fit ... the instruction, so that there would be no assurance" what the jury actually found, trial defense counsel replied "I think that's just pure oversight."

At trial, Movant's theory of defense was that "all three [victims] lied," "were lying" and "were basically buttressing each other's stories." Nothing about Movant's defense "was incident specific." Movant's defense "was a unitary defense," and "a general attack on [all three victims'] credibility." In trial defense counsel's view, "the verdicts ... basically depend[ed] on whether the jury believed the [victims] or [Movant]." In trial defense counsel's view, having "multiple incidents listed [in the jury instruction] and ... the jury then ask[ed] to reach a unanimous verdict," "would have been horrible, [and] would have been as if I was sending back trial testimony with the jury instruction." Trial defense counsel also thought that if she had requested that the verdict director for Count I be limited to a single, specific incident, that the prosecutor would have been able to include successfully all four incidents in the verdict director. Trial defense counsel "would have not been happy about that at all."[7] Trial defense counsel finished her testimony with the statement "But, again, at the time I think it's pretty clear that I didn't think about any of this."

We cannot determine, based on the above testimony, as a matter of law whether any finding of the trial court would be clearly erroneous. It is for the trial court to determine whether trial counsel's decision not to object to the verdict director was objectively reasonable even in light of trial counsel's testimony that the failure to object was pure oversight, especially in light of the testimony that there would be

7. *See also* **Hoeber**, 488 S.W.3d at 664 (Fischer, J., dissenting) (noting that in **State v. Celis-Garcia**, the grant of relief opened the door to make the matter considerably worse for movant when the Supreme Court's reversal of the original two counts and two concurrent 25-year sentences morphed to a conviction for ten counts and three consecutive life sentences plus 30 years.)

sound trial strategy reasons not to object. It must be the motion court that issues findings of fact and conclusions of law on all issues presented. Rule 29.15(k). Our review is limited, by rule, "to a determination of whether the findings and conclusions of the trial court are clearly erroneous". Rule 29.15(i). Without findings and conclusions by the motion court, our reviewing court must engage in a *de novo* review, which we are not permitted to do. *Frye v. State*, 392 S.W.3d 501, 507 (Mo. App. W.D. 2013). The relevant question for the motion court is not whether counsel's choices were strategic, but whether they were reasonable. *Roe v. Flores–Ortega*, 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). It is for the motion court to determine the credibility of all the witnesses.

We reverse the finding that Movant was not prejudiced but remand to the trial court for findings of fact and conclusions of law on the issue of whether trial counsel's choices were objectively reasonable.